Charles W. SMITH and Tyrone D. Smith, Plaintiffs,

v.

The CHICAGO CORPORATION, Defendant.

No. 82 C 7492.

United States District Court, N.D. Illinois, E.D.

April 18, 1983.

David Bortman, Bortman, Retson & Lipschultz, Chicago, Ill., for plaintiffs.

Robert Radasevich, Bell, Boyd & Lloyd, Chicago, Ill., for defendant.

Memorandum

LEIGHTON, District Judge.

This action is brought pursuant to Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, promulgated thereunder, and Section 12, Subdivision G of the Illinois Securities Act, Ill.Rev.Stat. ch. 121½ § 137.12. Plaintiffs Tyrone and Charles Smith opened securities accounts with the defendant Chicago Corporation in October and December of 1981, respectively. They allege that defendant's employee, Jesse Williams, violated Section 10(b) and Rule 10b–5 by failing to make certain purchases for the accounts as requested by plaintiffs, and by fraudulently withdrawing money from their accounts. The cause is before the court on the defendant's motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), Fed.R.Civ.P. Defendant contends that plaintiffs are not "purchasers" of securities, and therefore lack standing to sue under Section 10(b) and Rule 10b–5. It also argues that the alleged acts by Williams cannot form the basis for a claim under the Securities Exchange Act of 1934. After consideration of the parties' submissions, the court concludes that plaintiffs do not have standing to maintain this

action; and more importantly, they fail to state a claim under Section 10(b) and Rule 10b–5. The facts alleged which for the purpose of this motion are taken as true, are as follows.

### I

In October 1981, plaintiff Charles Smith opened an account with the defendant Chicago Corporation in which he deposited $60,000 worth of cash and securities. In December 1981, plaintiff Tyrone Smith also opened an account with the defendant. Jesse Williams was the account executive for both plaintiffs. On December 18, 1981, Tyrone deposited $35,000 in his account and directed Williams to invest the money in a money market fund. In February 1982, Tyrone deposited an additional $14,000. In March 1982, Tyrone instructed Williams to purchase $5,000 worth of Kulicke and Soffa common stock and to place $5,500 in an Individual Retirement Account (IRA). In early April 1982, Tyrone directed Williams to purchase an additional $5,000 worth of Kulicke and Soffa common stock. Williams agreed to follow all of Tyrone's directions.

In March of 1982, plaintiffs became concerned about their accounts because of irregularities in confirmations they were receiving; so, they made inquiries of defendant Chicago Corporation. Defendant conducted an investigation and discovered that Williams had never invested Tyrone's $35,000 in a money market fund, had never purchased the second order of Kulicke and Soffa stock, or invested Tyrone's $5,500 in an IRA. The investigation further disclosed that Williams had withdrawn $15,000 from Charles' account and $19,700 from Tyrone's and had converted the funds to his own use. Plaintiffs brought this action seeking damages in the amount of $37,720.

### II

■ The motion before the court presents two questions which have never been addressed by the Seventh Circuit. (1) Whether a person who maintains a securities investment account and who requests that certain purchases be made for that account has standing to bring an action under Section 10(b)[1] and Rule 10b–5.[2] (2) Whether such a person states a claim under these sections when purchases he orders are not made and money is misappropriated from his securities account. There are very few cases involving facts similar to this one; and all of them, with one exception, were decided before the Supreme Court's opinions in *Blue Chip Stamps v. Manor Drugs,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) and *Santa Fe Industries v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977),[3] two decisions on which

---

1. Section 10(b) of the 1934 Act provides in relevant part:

   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

   \* \* \* \* \* \*

   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

   15 U.S.C. § 78j.

2. Rule 10b–5, promulgated pursuant to Section 10(b), provides:

   It shall be unlawful for any person, directly or indirectly, by the use of any means or

instrumentality of interstate commerce, or of the mails or of any facilities of any national securities exchange:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made not misleading, or

(c) To engage in any act, practice, or course of business which operates as a fraud or deceit upon any person in connection with the purchase or sale of any security.

17 C.F.R. § 240, 10b–5.

3. *Goodman v. H. Hentz & Co.,* 265 F.Supp. 440 (N.D.Ill.1967); *Opper v. Hancock Sec. Corp.,* 250 F.Supp. 668 (S.D.N.Y.1966), *aff'd,* 367 F.2d 157 (2d Cir.1966); *Sinva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith,* 253 F.Supp. 359 (S.D.N.Y.1966).

this court relies. The most recent case, *Henricksen v. Henricksen,* 486 F.Supp. 622 (E.D.Wis.1980), *aff'd in part and rev'd in part,* 640 F.2d 880 (7th Cir.1981), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981), held that a broker's conversion of funds in a customer's securities account constitutes a violation of Section 10(b). However, the court cites no authority for this proposition. This court's resolutions of the issues before it are based on an analysis of the Supreme Court's *Blue Chip Stamps, Santa Fe Industries,* and the purposes behind Section 10(b).

In *Blue Chip Stamps,* the Supreme Court adopted the rationale of *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.1952), that only purchasers and sellers of securities can maintain actions for violations of Section 10 and Rule 10b–5. In so doing, the court noted that the Securities and Exchange Commission had twice attempted to get Congress to amend Section 10(b) to read "in connection with the purchase or sale of *or any attempt to purchase or sell* any securities." (emphasis added) The Court read Congress' refusal to make this change as an acceptance of the *Birnbaum* court's reasonable interpretation of the language of Section 10(b). The court went on to state that there were three classes of potential plaintiffs that were barred by *Birnbaum* from bringing actions under Section 10(b):

> First are potential purchasers of shares ... who allege that they decided not to purchase because of an unduly gloomy representation or the omission of favorable material which made the issuer appear to be a less favorable investment vehicle than it was. Second are actual shareholders in the issuer who allege that they decided not to sell their shares because of an unduly rosy representation or

a failure to disclose unfavorable material. Third are shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment due to the corporate or insider activities in connection with the purchase or sale of securities which violate Rule 10b–5.

*Blue Chip Stamps,* 421 U.S. at 737–738, 95 S.Ct. at 1926. Plaintiffs in this action fall into the first category; and consequently, they do not have standing to bring this action under Section 10(b) and Rule 10b–5.[4] This conclusion is not based solely on the fact that plaintiffs themselves made no purchases of securities;[5] it is because plaintiffs cannot allege, on the facts of this case, that anyone purchased or sold any securities. Therefore, the question whether plaintiffs state a claim under Section 10 and Rule 10b–5 need not be addressed. However, because it is an issue which has not been fully discussed by any court in this circuit, it will be touched on, briefly.

### III

The trend of the Supreme Court in recent years has been to limit the scope of the private remedy available under Section 10(b) and Rule 10b–5. *Panter v. Marshall Field & Co.,* 646 F.2d 271, 286 (7th Cir.1981), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); *O'Brien v. Continental Illinois National Bank & Trust,* 593 F.2d 54, 62–63 (7th Cir.1979). In *Santa Fe,* the Court enunciated two factors which must be considered in determining whether a cause of action should be implied in a particular case.

First, "a cause of action under the antifraud provisions of the Securities Exchange Act should not be implied where it is 'unnecessary to ensure the fulfillment of Congress' purposes' in adopting the Act."

---

**4.** Plaintiffs do not fall squarely within this class; they did not make a decision not to purchase any securities based on Williams' misrepresentations. In fact, they did not make any decision relevant to the purchase of securities based on his representations. *See infra.* But, to the extent that no purchase was in fact made, they fall within the group identified by the Court.

**5.** *See Norris v. Wirtz,* 551 F.Supp. 46 (N.D.Ill. 1982) in which Judge Moran held that the holding of *Blue Chip Stamps* did not prevent a testamentary trust beneficiary from bringing a 10b–5 action even though the actual sales of stock at issue were made by the co-executors of the estate.

430 U.S. at 477, 97 S.Ct. at 1303, quoting from *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 41, 97 S.Ct. 926, 949, 51 L.Ed.2d 124. The "fundamental purpose" of the Act is to insure full and fair disclosure in securities transactions. *Santa Fe,* 430 U.S. at 478, 97 S.Ct. at 1303. Thus, a 10b–5 action should not be implied where the wrongs sought to be addressed in an action "do not fall within § 10(b)'s fundamental purpose of requiring full and fair disclosure to participants in securities transactions of the information that would be useful to them in deciding whether to buy or sell securities." *O'Brien,* 593 F.2d at 60. The important question then, is to which decision did Jesse Williams' alleged misrepresentations and omissions relate? If they did not relate to a decision to purchase stock, then this action is outside the intended purposes of Section 10(b). In this case, Williams' misrepresentations and omissions were made after the decision to purchase had been made. The information withheld from plaintiffs was material to their decision not to terminate their account with the defendant, but it did not relate to the decisions to make purchase requests. Accordingly, the wrongs addressed in this action do not fall within Section 10(b)'s purpose of assuring full disclosure in securities transactions.

Second, is whether "the cause of action is one traditionally relegated to state law, . . ." *Santa Fe,* 430 U.S. at 478, 97 S.Ct. at 1303. Plaintiffs' claim here is essentially one for conversion. The only connection with federal securities laws is that the funds were converted from a securities investment account. However, the allegedly converted funds were not used to purchase securities and none of the acts complained of by plaintiffs involved the actual sale or purchase of securities. In light of the principles enunciated by the Court in *Santa Fe* and *Blue Chip Stamps,* this court is unwilling to imply a cause of action under Section 10(b) in this case, where the underlying claim is, in essence, one of state law and where no actual securities transactions are involved. For these reasons, the court concludes that no cause of action under Section

10 and Rule 10b–5 should be implied in the circumstances presented by this case.

Plaintiffs' remaining claim is based solely on state law. Under the doctrine of pendent jurisdiction, where federal claims are dismissed before trial, a federal court should not retain jurisdiction over remaining state law claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Having dismissed the federal claim, and finding no circumstances which would justify the continued exercise of jurisdiction over these wholly state law claims, the court dismisses this suit in its entirety.

So ordered.