Anthony **BOCHICCHIO,** Adeline **Bochicchio and J & D Oil Co.,** Plaintiffs,

v.

**SMITH BARNEY, HARRIS UPHAM & CO., INC.** and **Charles D'Angelo,** Defendants.

**No. 85 CIV. 6544 (PKL).**

United States District Court, S.D. New York.

Nov. 17, 1986.

Demov, Morris & Hammerling, New York City, for plaintiff; Stephen M. Rathkopf, Marshall H. Fishman, of counsel.

Janvey & Berglas, New York City, for defendant Smith Barney.

## OPINION & ORDER

LEISURE, District Judge:

This case involves a claim by Anthony Bochicchio, his wife, Adeline Bochicchio and J & D Oil, a sole proprietorship of Mrs. Bochicchio (hereinafter referred to collectively as "plaintiffs"), against Charles D'Angelo ("D'Angelo"), and D'Angelo's former employer, Smith Barney, Harris Upham & Co., Inc. ("Smith Barney"). D'Angelo was employed by Smith Barney as an account representative and as the branch manager of its Waterbury, Connecticut office. This action arises under (1) §§ 10 and 20 of the Securities and Exchange Act of 1934, as amended ("Exchange Act"), 15 U.S.C. §§ 78j and 78t; (2) the Rules and Regulations of the Securities and Exchange Commission promulgated under the aforementioned provisions; and (3) §§ 1961(1)(D), (3)(5), 1962 and 1964 of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Jurisdiction is conferred upon the Court by § 27 of the Exchange Act, 15 U.S.C. § 78aa; and § 1964 of RICO, 18 U.S.C. § 1964. No pendent state claims are asserted; diversity of citizenship is not alleged.

The case is now before the Court on defendant Smith Barney's motion[1] to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).[2] The allegations in the complaint, described below, are accepted as true for the purposes of deciding this motion to dismiss. *Miree v. DeKalb*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In considering Smith Barney's motion to dismiss, this Court is bound by the general rule that it "should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985), *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). For the reasons set forth below, (1) Smith Barney's motion is granted with respect to plaintiffs' federal securities claims; and (2) plaintiffs are ordered, if they still choose to pursue the litigation in this Court, after due consideration of the disposition herein[3], to amend their complaint with respect to their RICO claims.

## FACTUAL BACKROUND

Briefly stated the facts are as follows: This action was commenced on August 20, 1985. Plaintiffs are residents of Naugatuck, Connecticut. Smith Barney is a Delaware corporation with its principal place of business in the State and City of New York; it is an investment firm, registered as a broker and dealer in securities with the Securities and Exchange Commission, and a member of all principal securities exchanges and securities self-regulatory organizations. Smith Barney previously maintained a branch office in Waterbury, Connecticut.

Defendant Charles D'Angelo is the former manager of Smith Barney's former Waterbury office. By consent order, he has been barred from the securities industry by the SEC, has pleaded guilty to criminal charges arising out of his activites, and is currently serving a prison sentence. No criminal, civil or administrative charges have been brought against Smith Barney by any federal, state or industry regulatory organization arising out of D'Angelos's actions.

According to plaintiffs' complaint, beginning in or around 1979, D'Angelo, acting as an agent of Smith Barney, represented to plaintiffs that: (1) plaintiffs could place their trust in him because he was a highly skilled expert in the securities investment field; (2) with D'Angelo's guidance, plaintiffs' funds would remain secure and would be professionally managed; (3) plaintiffs need not concern themselves with nor question D'Angelo's investment decisions because D'Angelo was "paid" to have control over the accounts; (4) if plaintiffs regularly deposited monies into the accounts, D'Angelo would make purchases and insure a regular flow of income to plaintiffs; and (5) D'Angelo would at all times be guided by plaintiffs' paramount objective—safety of principal. Complaint ¶¶ 12(b), (d-f).

Relying on these representations, plaintiffs opened securities trading accounts with Smith Barney: one in Mr. Bochicchio's name; another as a joint account for Mr. Bochicchio and his wife; and, also an account in the name of Mrs. Bochicchio's company, J. & D. Oil. The Court infers that unspecified sums of money were deposited into these accounts for investment

---

1. The Court's decision also applies under the appropriate circumstances to plaintiffs' claims against Mr. D'Angelo.

2. Smith Barney has also moved for an order pursuant to § 3 of the U.S. Arbitration Act, 9 U.S.C. § 3, staying all claims in this action pending arbitration, at least with respect to plaintiff Anthony Bochicchio. In light of the Second Circuit's decision in *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.1986), the Court denies Smith Barney's arbitration motion.

3. In affirming the dismissal of federal securities claims, the Second Circuit recently noted that New York law permits a plaintiff to refile its state law claims in a state court within six months of the Court's decision. *Mayer v. Oil Field Systems Corp.*, 803 F.2d 749, 756–57, slip op. at 6194–95 (2d Cir.1986).

purposes.[4] D'Angelo was given complete control over the accounts. From 1979 through 1984 plaintiffs deposited monies in these accounts.

Plaintiffs allege that D'Angelo's representations were false. They allege that, D'Angelo made unauthorized sales of plaintiffs' securities, forged plaintiffs' endorsements on the proceed checks, converted the proceeds and made unauthorized withdrawals from plaintiffs' accounts. Complaint ¶¶ 12(f), (h). D'Angelo's unlawful actions purportedly caused plaintiffs to lose, out-of-pocket, in excess of $340,000—consisting of deposits and excess margin payments made to Smith Barney. Plaintiffs were also defrauded into paying Smith Barney commissions for the unauthorized trades made by D'Angelo.

D'Angelo allegedly evaded detection by misrepresenting the status of plaintiffs' accounts through temporarily crediting their accounts with his own monies. D'Angelo's improper deposits enabled the margin maintenance requirements of the accounts to be met. D'Angelo then purportedly mailed to plaintiffs false statements of their accounts. Complaint ¶ 12(h)(3).

## LEGAL DISCUSSION

### A. *The Federal Securities Claims*

Smith Barney moves to dismiss plaintiffs' federal securities claims because it claims that "under the facts alleged, plaintiffs at best are able to assert only a state common law claim for conversion." Smith Barney Memorandum, 25. The operative provisions that form the basis of plaintiffs federal securities claims are § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and SEC Rule 10b–5 promulgated thereunder, 17 CFR 240.10b–5.[5]

■ The essential elements of a claim for damages under these provisions are (1) damage to plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) made with an intent to deceive, manipulate or defraud (scienter), (4) in connection with the purchase or sale of securities and (5) furthered by defendant's use of the mails or any facility of a national securities exchange. *Lloyd v. Industrial Bio-Test Laboratories, Inc.*, 454 F.Supp. 807, 810 (S.D.N.Y.1978). Smith Barney argues that plaintiffs' complaint fails to allege the requisite facts to satisfy the "in connection with the purchase or sale of any security" element.

■ In *Chemical Bank v. Arthur Anderson & Co.*, 726 F.2d 930, 943 (2d Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984), the Second Circuit noted that:

> In *Rubin* [*v. United States*, 449 U.S. 424 (1981)] at 429 n. 6 [101 S.Ct. 698, 701 n. 6, 66 L.Ed.2d 633], ..., the Supreme Court stated that it "need not decide whether misrepresentations or omissions involved in a securities transaction but not pertaining to the securities themselves can form the basis of a violation of § 17(a) [of the Securities Act of 1933, 15 U.S.C. § 77q(a) ]." We are here compelled to decide that question, with respect to § 10(b) and Rule 10b–5 as well as § 17(a); our answer is in the negative.

Under the law of this Circuit, in order to be actionable under § 10(b) and Rule 10b–5, material misrepresentations or omissions must pertain to the securities themselves. *S.E.C. v. Drysdale Securities Corp.*, 785 F.2d 38 (2d Cir.); *cert. denied*, —— U.S. ——, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986).

In *Chemical Bank, supra*, 726 F.2d at 298, Judge Friendly explained:

> The purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they

---

4. Plaintiffs' Complaint does not allege a particular sum or sums.

5. Although plaintiffs also assert liability for Smith Barney under § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), that section imposes derivative liability only. Therefore, if no underlying violations are sufficiently alleged, there can be no derivative liability. *Bosio v. Norbay Securities, Inc.*, 599 F.Supp. 1563, 1568 (E.D.N.Y.1985).

think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.

In applying these laws, the courts have recognized that the "fundamental purpose" behind the enactment of the federal securities laws was to require "full and fair disclosure to participants in securities transactions of the information that would be useful to them in deciding whether to buy or sell securities." *O'Brien v. Continental Illinois National Bank and Trust,* 593 F.2d 54, 60 (1979).

"The Court is convinced that the ['in connection with the purchase or sale of securities'] requirement of the securities laws has not [here] been satisfied." *Miller v. Smith Barney, Harris Upham & Co., Inc., Shearson/American Express, Inc., and Burdick,* No. 84—4307, slip op. (S.D. N.Y. Feb. 24, 1986) (Keenan, J.) [Available on WESTLAW, DCTU database]. "The complaint here alleges no more than a conversion of property that happened to involve securities. [The Court] is unwilling to extend the reach of the securities laws to every conversion or theft of security." *Pross v. Katz,* 784 F.2d 455, 459 (2d Cir. 1986). In this case "[t]he only connection with federal securities laws is that the funds were converted from a securities investment account." *Smith v. Chicago Corp.,* 566 F.Supp. 66, 70 (N.D.Ill.1983).

■ Plaintiffs fail to allege that D'Angelo made any misrepresentation or omission regarding the character or nature of the securities involved. No particular security is even mentioned or alluded to in the Complaint. Plaintiffs also do not allege that they made any investment decisions, other than their original decision to open an investment account, based upon D'Angelo's alleged activities. The complaint does not allege that defendants "induced [plaintiffs] to take steps at the time of the purchase and sale of the [plaintiffs'] investments that contributed directly to the later fraudulent conversion." *Pross, supra,* 784 F.2d at 459.

■ Plaintiffs' claim against Smith Barney is "in effect, for breach of fiduciary duty, negligence or conversion, with respect to the various defendants." *Miller, supra,* slip op. at 9–10. The gravamen of the complaint sounds in negligence or conversion, areas "traditionally relegated to state law ...." *Smith, supra,* 566 F.Supp. at 70 (citing *Santa Fe Industries v. Green,* 430 U.S. 462, 478, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977). "Where the underlying claim is, in essence, one of state law and where no actual securities transactions are involved, the principles first enunciated by the Supreme Court in *Blue Chip Stamps v. Manor Drugs,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539, *reh. denied,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975) should be given effect, and the scope of the private remedy available under the securities laws should be read as narrowly as tenable." *Miller, supra,* slip op. at 10. In sum, the conversion of securities, even if it occurs from a brokerage account, does not state a claim under § 10(b).[6] Therefore, the federal securities claims must be dismissed for failure to state a claim upon which relief can be granted.[7]

**B.  *The RICO Claims***

■ The dismissal of their federal securities claims, notwithstanding, plaintiffs purport to state claims under RICO. Although the requirements for pleading and proving a violation of different subsections of RICO may vary, "one prerequisite must be pleaded in every instance: a 'pattern of racketeering.'" *Richter v. Sudman,* 634

---

**6.** The cases cited by plaintiffs supporting the opposite result are easily distinguishable. *See Miller, supra,* slip op. at 10.

**7.** Thus it is unnecessary for the Court to reach Smith Barney's further argument that plaintiffs' federal securities claims should be dismissed because the allegations contained in the Complaint "do not even remotely approach satisfaction of this Circuit's 'loss causation' and 'transaction causation' requirement." Smith Barney Memorandum, 29–30.

F.Supp. 234, 238 (S.D.N.Y.1986). "To properly allege a 'pattern of racketeering', the [Complaint] must allege at least two acts of 'racketeering activity', one of which occurred after the effective date of [the RICO statute], and the last of which occurred within ten years ... after the commission of a prior act of 'racketeering activity.'" 18 U.S.C. § 1961(5).

In *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court, in interpreting the language of the statute, indicated that "[t]he 'extraordinary uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of 'pattern.'" *Id.* 105 S.Ct. at 3287. In a footnote, the Court suggested how the term "pattern might be restrictively interpreted:

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this fact of *continuity plus relationship* which combines to produce a pattern". S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

*Id.* 105 S.Ct. at 3285 n. 14.

Judge Goettel, in *Richter, supra,* 634 F.Supp. at 238, notes that in numerous decisions after *Sedima,* "the courts in this and other districts have focused on the continuity aspect of the Supreme Court's formulation." Under his analysis, Judge Goettel points out that "[t]he fact that a single activity may continue over a particular length of time does not necessarily establish a pattern. Indeed, the issue is not the continuity of a single activity, but whether the defendants had a *practice* of engaging in the same or similar types of activity." *Id.* at 238–39." Therefore, such an analysis suggests an additional "element: distinct, multiple acts, which when taken together, give rise to the inference of a broad general practice of proscribed activity." *Id.* at 239.

Judge Sand, in *Soper v. Simmons International, Ltd.*, 632 F.Supp. 244 (S.D.N.Y. 1986) also states that "the correct interpretation of the 'pattern' requirement as articulated by *Sedima* and its progeny requires more than two related acts." *Id.* at 254. More importantly, Judge Sand indicates that in addition to alleging the predicate acts, the plaintiff must also establish "'some sort of continuity between the acts of or a threat of continuing criminal activity.'" *Id.* He further states that acts which are merely performed "in the execution of a single [allegedly] fraudulent scheme" do not satisfy the pattern requirement. *Id.* See also *Furman v. Cirrito,* No 82–4428, slip op. at 15 (S.D.N.Y. March 12, 1986) (Cooper, J.) [Available on WEST-LAW, DCTU database].

Another opinion recently decided in this District, *Crummere v. Brown,* No. 85–1376, slip op., at 8–9 (S.D.N.Y. April 3, 1986) (Sweet, J.) [Available on WESTLAW, DCTU database], discusses the pattern requirement in this same fashion. In *Crummere,* "the plaintiff, an individual investor, claimed that the defendant's illegal wire transfers of her money, his fraudulent sale of her securities, and his conspiracy to commit the same, satisfied the pattern requirement." *Richter, supra,* 634 F.Supp. at 239. Judge Sweet disagreed, finding that these "multiple predicate acts" were merely a series of events necessary to complete the lone fraudulent scheme of diverting

plaintiff's funds. *Crummere, supra,* slip op. at 9. This single scheme was held not to constitute a pattern. *Id.*

Judge Goettel draws one further distinction. "Not only must a definition of pattern effectively distinguish between a pattern of activity and a single transaction whose separate, component acts mimic a pattern, but it must also incorporate the relatedness aspect of the formulation." *Richter, supra,* 634 F.Supp. at 240. Therefore, component acts which "comprise the illegal activity must be sufficiently related so as to give rise to a general pervasive scheme of untoward conduct." *Id.*

With the foregoing principles in mind, the Court looks to Smith Barney's contention that the plaintiffs have not alleged a "pattern of racketeering activity." [8] In addition to their federal securities claims, now dismissed, plaintiffs have claimed that defendants engaged in numerous acts of mail fraud—by having transmitted false statements of plaintiff's accounts through the mails. Plaintiffs' complaint fails to clearly allege facts, which under the developing law in this District, appear critical to the successful statement of a RICO claim. The Court, however, rather than deciding whether plaintiffs' claims, as they are now alleged, satisfy the standard currently evolving in the District [9]—without providing an opportunity for plaintiffs' and defendant to examine this new line of cases—will instead permit plaintiffs the opportunity to amend their complaint, with respect to their RICO claims.

### CONCLUSION

For the foregoing reasons, Smith Barney's motion to compel arbitration is denied; its motion to dismiss plaintiffs' federal securities claims is granted. Plaintiffs are permitted, if they decide after reviewing the aforementioned cases to continue this litigation in the Federal system, to amend their RICO claims.

SO ORDERED.

---

8. Based on the disposition of the motion herein, it would be premature for the Court to consider Smith Barney's additional arguments regarding plaintiffs' RICO allegations.

9. As Judge Knapp states: "Thus it has become clear [in the civil RICO context] that something more than merely two prior acts is required. *The question remains how much more."* *United States v. Friedman,* 635 F.Supp. 782, 784 (S.D.N.Y.1986) (emphasis added).