David A. JOHN, Plaintiff,

v.

Henry T. BLACKSTOCK, etc., et al., Defendants.

David A. JOHN, etc., Plaintiff,

v.

Henry T. BLACKSTOCK, etc., et al., Defendants.

Nos. 87–15–Civ–J–14, 87–16–Civ–J–14.

United States District Court,
M.D. Florida,
Jacksonville Division.

July 29, 1987.

Robert Meek, Jacksonville, Fla., for plaintiff.

Stephen Busey, Jacksonville, Fla., for defendants.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

These cases came on upon the defendants' Motions To Dismiss, filed herein on April 3, 1987. Plaintiffs' responses were filed April 20, 1987.[1] The Court heard oral argument on June 23, 1987.

Defendants seek to dismiss the Complaints, filed January 9, 1987. The jurisdiction of this Court is premised upon Count I of the Complaints in which plaintiffs allege liability of the defendants under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rule 10b–5, 17 C.F.R. § 248.10(b)-(5) [hereinafter "Rule 10b–5"]. Counts II through VI allege pendent state claims for conversion, breach of contract, negligence, violation of Section 812.035(7), Florida Statutes, and common law fraud. Defendants assert that plaintiffs fail to state a claim upon which relief can be granted in Count I because plaintiffs fail to allege that defendants' fraudulent statements were in connection with the purchase and sale of securities.

The plaintiffs allegations in the Complaints supporting the 10b–5 claim may be summarized as follows. Plaintiffs allege that in 1986, defendant Buttimer, an employee of defendant Blackstock and Co., induced the plaintiffs to invest their money in a fictitious "Blackstock house account." Buttimer misrepresented that such an account existed and that plaintiffs' funds were actually deposited in this account. Buttimer, instead of investing the plaintiffs' funds, converted the funds to his own use, at the same time misrepresenting to plaintiffs that their funds were invested in securities. Plaintiffs allege that Buttimer failed to engage in trading in plaintiffs' account and that he concealed losses to the account by misrepresenting that the account statements contained computer and bookkeeping errors. Complaint, paragraphs 14, 15.

The parties agree that an essential element of plaintiffs' 10b–5 claim is that defendants' misrepresentations be made in connection with the purchase and sale of securities. Defendants, relying on *Smith v. The Chicago Corp.*, 566 F.Supp. 66 (N.D. Ill.1983), assert that the alleged misrepresentations in this case were not made in connection with the purchase and sale of securities.[2] It is plaintiffs' position in the

---

1. These cases were consolidated on January 22, 1987. The only difference in the cases is the identity of the plaintiffs. Identical Complaints, Motions to Dismiss, and responses were filed in both actions.

2. In *Smith,* plaintiffs alleged that they opened securities accounts and instead of making the requested investments, defendant withdrew money from plaintiffs' accounts and converted the funds to his own use. The defendant sought to dismiss on the ground that any misrepresentations were not in connection with the purchase and sale of securities. The court granted the motion to dismiss because plaintiffs could not allege "that anyone purchased or sold any securities." The court cited *Blue Chip Stamps v. Manor Drugs,* 421 U.S. 723, 732, 95 S.Ct. 1917,

1924, 44 L.Ed.2d 539 (1975), wherein the Supreme Court noted that the Securities and Exchange Commission had twice attempted to broaden Section 10(b) to include "any attempt to purchase or sell any securities." The Supreme Court interpreted Congress' refusal to adopt this amendment as an indication that only actual purchasers or sellers of securities can maintain actions under section 10(b). *Smith,* 566 F.Supp. at 69.

The *Smith* court further reasoned that a 10b–5 claim should not be implied where the action does not fall within the purpose of section 10(b) of "requiring full and fair disclosure to participants in securities transactions of the information that would be useful to them in deciding whether to buy or sell securities." *Id.* at 70,

Memorandum and at oral argument that the "Blackstock house account" was a security and thus, defendant Buttimer's statements were in connection with the purchase of a security. Memorandum, at 2. Plaintiffs rely on *Wagman v. FSC Securities Corp.*, Fed.Sec.L.Rep. (CCH) ¶ 92,-445 (N.D.Ill.1985) [Available on WESTLAW, DCT database].

In *Wagman*, plaintiffs brought a Rule 10b–5 action based on alleged false and misleading statements in connection with the sale of interests in Caprimex Currency Hedge Accounts. Defendants sought to dismiss on the basis that plaintiffs failed to plead the existence of a security. Plaintiffs asserted that the Caprimex accounts were investment contracts included in the definition of security. The court quoted the Complaint wherein plaintiffs pleaded that Caprimex issues securities known as Currency Hedge Accounts in which investors expected profits solely on the basis of the management and operation of those accounts. The court stated that as a pleading matter, plaintiffs had sufficiently alleged the existence of a security.

Plaintiff's reliance on *Wagman* and position in this case that they purchased securities when investing in the Blackstock account is inconsistent with the allegations in their Complaints. Plaintiffs allege: "There was no Blackstock house account, and monies and property received by Buttimer for the house account were appropriated and converted to Buttimer's own use." Complaints, paragraph 15(a). The allegation that no Blackstock house account exists distinguishes this case from *Wagman* wherein plaintiffs pleaded the existence of a house account which they maintained constituted a security.

The Court concludes that in the present actions, plaintiffs are asserting a Rule 10b–5 claim on the basis of an *attempt* to invest in securities and not in connection with the purchase and sale of securities. Rule 10b–5 is not intended to address fraudulent statements to induce a party into depositing funds in securities accounts when no securities are actually purchased or sold. The Court will, therefore, grant the motions and dismiss Count I with prejudice. Under the authority of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Court will dismiss the remaining pendent state claims.

Accordingly, it is

ORDERED:

1. That the Motions to Dismiss, filed herein on April 3, 1987, are granted.

2. That the Clerk of the Court is hereby directed to enter Judgment of dismissal with prejudice as to Count I and dismissal without prejudice as to Counts II through VI.

---

quoting, *O'Brien v. Continental Illinois National Bank & Trust*, 593 F.2d 54, 60 (7th Cir.1979). The *Smith* court concluded that defendant's alleged misrepresentations did not relate to a decision to purchase securities but to plaintiffs' decision not to terminate their account. Furthermore, the *Smith* court noted that plaintiffs' claim was essentially one for conversion which is traditionally relegated to state law.
*Smith* has been followed by the courts of the Second Circuit. *See, e.g., Bochicchio v. Smith Barney, Harris Upham & Co., Inc.*, 647 F.Supp. 1426, 1430 (S.D.N.Y.1986) (fraudulent statements in connection with converting funds from securities account were not made in connection with the sale and purchase of securities.); *Bosio v. Norbay Securities, Inc.*, 599 F.Supp. 1563, 1566–67 (E.D.N.Y.1985) (defendant's alleged misrepresentation that he would follow plaintiff's instruction went to the arrangements concerning the mechanics of the sale and was not a misrepresentation in connection with the purchase and sale of securities). This appears to be a case of first impression in this circuit.