Marie CRUMMERE, Plaintiff,

v.

SMITH BARNEY, HARRIS UPHAM & CO. INCORPORATED, Michael Q. Brown, Jackie Johnston, Merrill Lynch, Pierce, Fenner & Smith, Inc. and Frank Caverretta, Defendants.

No. 85 Civ. 1376 (RWS).

United States District Court,
S.D. New York.

Oct. 31, 1985.

it gave oral or written notice to the Exchange Agent.

John P. Rudden, New York City, for plaintiff.

Bachner, Talley & Mantel, New York City (David E. Wolff, of counsel), for defendant Jackie Johnston.

Mandel, Weiner & Block, New York City (Phillip Mandel, of counsel), for defendant Merrill Lynch.

Henry Lukas, New York City, for defendant Smith Barney c/o Smith Barney, Harris Upham & Co., Inc.

Cletus P. Lyman, Philadelphia, Pa., for defendant Michael Q. Brown.

## OPINION

SWEET, District Judge.

Now pending in this securities case are motions on behalf of the individual defendants Michael Brown ("Brown") *pro se*, Frank Caverretta ("Caverretta"), Jackie Johnston ("Johnston"), and the two securities firm defendants, Smith Barney, Harris Upham & Co., Inc. ("Smith Barney") and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), to dismiss the amended complaint of plaintiff Marie Crummere ("Crummere") for lack of federal subject matter jurisdiction, failure to state a claim upon which relief can be granted, and for failure to plead fraud with particularity, Federal Rules of Civil Procedure, Rules 12(b)(1), 12(b)(6) and 9(b) respectively. The motion is granted for the reasons set forth below.

### Prior Proceedings

Crummere's initial complaint, filed on February 20, 1985, contained only one claim against defendants Smith Barney, Brown and Johnston which is identical to the first claim of the amended complaint discussed below. On May 24, 1985, Crummere amended her complaint pursuant to leave of this court, adding a second claim against Merrill Lynch and Caverretta and a third claim against Chemical Bank which

was dismissed for lack of federal jurisdiction over the defendant. In response to this amended complaint, all defendants filed this motion to dismiss the complaint of July 14, 1985, and one month later Crummere filed a motion for partial summary judgment against defendant Brown on the state law claim. In addition, Crummere has sought leave to amend her amended complaint to add a claim under 18 U.S.C. §§ 1961 *et seq.* (RICO).

**Facts**

In determining the validity of a motion to dismiss, the court assumes and sets forth below the facts contained in Crummere's amended complaint. *SEC v. Drysdale Securities Corp.*, 606 F.Supp. 295 (S.D.N.Y. 1985); *Miree v. DeKalb*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

The complaint charges that the defendants Brown, Johnston, and Caverretta, with the aid of the corporate defendants Smith Barney and Merrill Lynch, defrauded her in violation of the federal securities laws and state laws under the following alleged facts.

In August of 1983, Crummere was approached by Brown who persuaded her to give him $61,000 in cash over the next four months to invest on her behalf with Smith Barney, the brokerage firm which was employing Brown as a registered representative. Five thousand dollars of this initial sum came from the cashing of Long Island Lighting Company ("LILCO") bonds owned by the plaintiff. Instead of investing this money for Crummere in her Smith Barney account, Brown diverted it to an account maintained at Merrill Lynch in the name of his sister, Jackie Johnston, an account managed by Caverretta as registered representative employed by Merrill Lynch. This Johnston account was controlled by Brown who had discretionary authority over the account. Crummere never received any documentation regarding the investments Brown was purportedly making

on her behalf, despite her efforts to verify the safety of her savings.

The misappropriation of funds continued throughout the fall of 1984, when Brown persuaded Crummere to cash $154,000 worth of bonds which she had entrusted to him in her account. She received two checks (totaling $154,000) from Smith Barney as proceeds of these bonds and deposited them in her personal checking account at Chemical Bank. One day later, Crummere turned these proceeds over to Brown for investment in her Smith Barney account by drawing personal checks from her Chemical Bank account. When Crummere received the cancelled checks, she discovered that they never had been deposited in her account, that Smith Barney as payee had been replaced with the word "cash", and that they were deposited instead in Brown's personal checking account at Chemical Bank. These funds eventually were transferred to Johnston's account at Merrill Lynch. When Crummere confronted Brown with these cancelled checks in October of 1985, Brown gave her four promissory notes totaling $220,500. Apparently not comforted by the tender of these notes, Crummere telephoned Brown's branch manager at Smith Barney to complain of Brown's alleged fraud. The supervisor never returned her call, and Crummere later contacted another Smith Barney representative to complain that Brown had defrauded her.

The plaintiff bases three claims on these circuitous diversions of her funds. The first claim is that Brown, Johnston and Smith Barney conspired to misappropriate funds and to divert them into the Merrill Lynch account under Johnston's name, violating section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. section 78j(b), and sections 12 or 17 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77*l* and 77q.[1] Crummere also alleges two pendent state claims related to this first claim, one based

---

**1.** Crummere's amended complaint failed to cite the specific sections of the 1934 Act and the Securities Act which were allegedly violated.

These citations were made in plaintiff's memorandum of law in opposition to defendants' motion to dismiss.

on Brown's tender of the four promissory notes, and the other based on Smith Barney's allegedly negligent hiring and supervision of Brown.

Crummere's second cause of action centers around the activities of Brown and Caverretta in the administration of Johnston's brokerage account with Merrill Lynch. Crummere contends that Brown, Caverretta and Merrill Lynch conspired to defraud her by diverting money from her Smith Barney account, placing the money in the Merrill Lynch account under Brown's actual control, and "engaging in speculative, inappropriate churning" of the securities. The claim further alleges that Merrill Lynch knew or should have known that such activities were improper and unlawful and that Merrill Lynch negligently supervised the activities of Caverretta with regard to the account.

The final claim charged that Chemical Bank improperly honored the two checks altered by Brown in violation of the Uniform Commercial Code and applicable duties under common law of negligence and warranty. Chemical Bank was, however, dismissed as a defendant on August 19, 1985 for lack of federal jurisdiction.

**Discussion**

■ Crummere's amended complaint fails to establish grounds for the exercise of federal jurisdiction over her claim. In order to state a claim under the fraud provisions of the Securities Act or the 1934 Act, the fraud must have been accomplished through the purchase or sale of a security. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (A private damage action under Rule 10b–5 is confined to actual purchasers and sellers of securities); *Birnbaum v. Newport Steel*, 193 F.2d 461 (2d Cir.1952); *Parness v. Lieblich*, 489 F.Supp. 889, 892 (S.D.N.Y.1980) (A plaintiff who is not a purchaser of securities may not maintain a cause of action under Section 17(a) of the Securities Act).

■ Under both the Securities Act and the 1934 Act, isolated sales or purchases will not satisfy this standing requirement.

To state a claim under Rule 10b–5 of the Exchange Act, Crummere must show (1) the defendants misrepresented or omitted to state material facts in connection with the purchase or sale of a security; (2) that she relied to her detriment upon defendants' misrepresentations and omissions; and (3) defendants made their misrepresentations or omissions with scienter. *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225, 1231 (S.D.N.Y.1981). Section 17(a) of the Securities Act requires the same stringent connection between the fraud and the security transaction. Plaintiffs must show that the fraud, misstatement or omission occurred "in the offer or sale of any securities." *Chemical Bank v. Arthur Anderson & Co.*, 726 F.2d 930, 945 (2d Cir.1984) (The standard for connection imposed by 17(a) of the Securities Act is at least as high as that of 10(b) and Rule 10b–5).

Crummere alleges that three groupings of transactions meet this purchase and sale requirement: the initial sale of LILCO bonds, the sale of $154,000 of miscellaneous bonds, and the "churning" of securities in Jackie Johnston's Merrill Lynch account. These security transactions were so removed from the alleged conversion of Crummere's funds, that they fail to constitute transactions "in connection" with the fraud.

■ Crummere admits in her complaint that the initial sale of LILCO bonds to open her Smith Barney account proceeded without incident (Par. 12) and that the bonds were sold for full value with no detrimental reliance on any representations made by Brown. The $154,000 of miscellaneous bonds were cashed by Smith Barney in accordance with Crummere's instructions, and Smith Barney sent checks to her home which she deposited in her personal checking account at Chemical Bank. While Brown later convinced Crummere to turn over the proceeds of this sale to him for investments which he never made on her behalf, the mere fact that the funds originated from a bond sale does not connect them to a later conversion of those funds.

To satisfy the purchase and sale requirements of rule 10b–5, there must be a causal connection between the misstatements or omissions and the plaintiff's purchases or sales, and there can be no such connection where the misstatement occurs after the purchase. *Troyer v. Karcagi*, 476 F.Supp. 1142, 1148 (S.D.N.Y.1979). Here, Brown's alleged misstatements occurred after the unremarkable sale of Crummere's bonds, when he converted the funds to Johnston's account at Merrill Lynch. While Brown may have deceived Crummere into believing that the proceeds of the bond sales would be invested for her, these deceptions did not relate to specific securities, and thus do not meet the "in connection with" requirements of Rule 10b–5. *SEC v. Drysdale Securities, supra*, 606 F.Supp. 295 (S.D.N.Y.1985).

The fraud which Crummere alleges is actually a failure to purchase or sell securities for her benefit, and courts have been careful to avoid creating federal securities claims out of such common law conversion claims against brokers. In *Smith v. Chicago Corporation*, 566 F.Supp. 66 (N.D.Ill. 1983), the district court declined to permit this alteration of the "in connection" requirement. Smith's investment funds were diverted to the personal account of his broker rather than used to purchase stock which Smith had requested the broker to purchase. The court held that Smith did not have standing to assert a Rule 10b–5 violation because no purchase had been made in connection with his broker's misrepresentations. Similarly, in *Bosio v. Norbay Securities, Inc.*, 599 F.Supp. 1563, 1567 (E.D.N.Y.1985), the court held that a broker's failure to turn over the cash proceeds of a stock sale in the plaintiff's account could not sustain a claim under Rule 10b–5 because it was a misrepresentation not as to the inducement to sell the stock, but as to the mechanics of the sale and disposal of the proceeds. "Such 'bootstrapping' of a conversion claim should not be permitted." *Id.* at 1567–68 (citations omitted).

Crummere attempts to distinguish the *Smith* and *Bosio* cases by claiming that purchases and sales in Johnston's Merrill Lynch account satisfy the "in connection" requirement for Crummere's Smith Barney account. Crummere argues that the Merrill Lynch account should be considered a "constructive trust" and that the "churning" and deceptive practices which occurred in the account can supply the basis for the Rule 10b–5 claim. This contention has no merit, however, because Crummere's complaint offered no evidence to support the existence of a conspiracy among Brown, Caverretta and Merrill Lynch. Although Caverretta and Brown were personal friends and Brown had discretion over the Merrill Lynch account of his sister, no facts were asserted to indicate that Caverretta knew that Johnston's funds were the proceeds of a scheme to defraud Crummere.

Even if Crummere could establish a conspiratorial connection between the Smith Barney and Merrill Lynch accounts, she would fail to qualify for standing under section 10(b). The Second Circuit court has stated that the misrepresentation must relate to the securities alleged to satisfy the purchase and sale requirement, and not just to the transaction in its entirety. *Chemical Bank v. Arthur Anderson & Co., supra*, 726 F.2d at 943; *SEC v. Drysdale Securities Corp., supra*, 606 F.Supp. 295. While Crummere's claim that there was a conspiracy to defraud her could create some relationship between the two brokerage accounts, Brown's misrepresentations to her would remain unrelated to the actual securities traded in the Merrill Lynch account.

Crummere offers two cases to support the notion that the reasoning in the *Chemical Bank* and *Drysdale* cases *supra* should not control this case. In *Competitive Associates Inc. v. Laventhal, K.H. & H.*, 516 F.2d 811 (2d Cir.1975) the Second Circuit sustained an investors federal securities claims against an accounting firm based on the fact that the accounting firm had falsified information about an investment advisory firm through which the plaintiffs eventually made large purchases and sales of

securities. The *Competitive Associates* court stated, however, that "the accountants accepted payoffs and otherwise actively collaborated with Yamada [the investment advisor] for the specific purpose of influencing investors to carry out security transactions on its behalf." *Id.* at 815.

Reliance on *Competitive Associates* is, however, misplaced for three reasons. First, Crummere has shown no evidence of such a conspiracy between Brown and Caverretta. Second, no securities were purchased on her behalf either in the Smith Barney or Merrill Lynch account. Finally, there is doubt as to the viability of the *Competitive Associates* interpretation of the "in connection" requirement of Rule 10b–5 in the wake of the Second Circuit's more restrictive reading of this requirement in the *Chemical Bank* case. *See SEC v. Drysdale Securities Corp., supra,* 606 F.Supp. at 299.

The Second Circuit's *Chemical Bank* holding that misrepresentations must pertain to the value of securities purchased or sold by the plaintiff also preempts Crummere's reliance on *Henricksen v. Henricksen,* 486 F.Supp. 622 (E.D.Wisc.1980), *aff'd in part, rev'd in part,* 640 F.2d 880 (7th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981), a case not controlling in this Circuit. This case endorses the theory that sales or purchases made by someone other than the plaintiff with the converted funds is part of a "scheme to defraud" within the meaning of section 10(b). Furthermore, the *Henricksen* Court cited no authority for this proposition, a fact which has weakened the value of the case in other districts. *See, e.g., Smith v. Chicago Corporation, supra,* 566 F.Supp. at 69 (N.D.Ill.1983).

■ Thus Crummere's amended complaint fails to establish that the federal courts have jurisdiction over her claim because it has not demonstrated that she purchased or sold a security in connection with Brown's misrepresentations. Crummere's remaining claims are based solely on state law, and this court normally would decline to retain jurisdiction over the pendent state claims in the absence of a federal claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). However, by companion motion decided in conjunction with this motion, Crummere has sought leave to amend her amended complaint to add a claim based on 18 U.S.C. §§ 1961 *et seq.* (RICO) which leave has been granted in light of the recent developments in that area.

Therefore the securities claims are dismissed as against all defendants, and leave is granted to renew the motion to dismiss the common law claims in connection with any motions directed to the second amended complaint. Crummere may renew her pending cross motion for partial summary judgment against defendant Brown based on the state law claims after filing the second amended complaint. In addition, the hearing date for Crummere's renewed motion for partial summary judgment shall be set for not less than thirty (30) days after the filing of the motion in view of the fact that defendant Brown's counsel is newly appointed.

IT IS SO ORDERED.