MANUFACTURERS HANOVER TRUST
COMPANY, Plaintiff,

v.

SMITH BARNEY, HARRIS UPHAM &
CO. INCORPORATED, Tucker Antho-
ny & R.L. Day, Inc., Randolph T. Ca-
den, Grace Marie Caden, Thomas F.
Brancato, individually and doing busi-
ness as Mackey Investment Fund, and
Robert Serio, Defendants.

No. 90 Civ. 4274 (WCC).

United States District Court,
S.D. New York.

July 22, 1991.

Robert M. Rosenblith, New York City (Robin J. Arzt, of counsel), for plaintiff Manufacturers Hanover Trust Co.

Hugh McGovern, Legal Dept., Smith Barney, Harris Upham & Co., Inc., New York City, for defendants Smith Barney and Robert Serio.

Lloyd S. Clareman, New York City, for defendant Tucker Anthony.

Lecci, Wolin & Wolin, Hicksville, N.Y., for defendants, Randolph T. Caden, Grace Marie Caden.

Thomas F. Brancato, pro se.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Manufacturers Hanover Trust Company ("MHT"), a stock transfer agent for various publicly traded issuers, seeks to recover under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. § 240.10b–5, and a variety of common law theories, losses it sustained as a result of the defalcations of the assistant manager of its stock transfer department, Thomas Brancato ("Brancato").

Defendants Smith Barney, Harris Upham & Co., Inc. ("Smith Barney"), Robert Serio ("Serio"), and Tucker Anthony, Inc. ("Tucker Anthony") move this Court for an order, pursuant to Rules 12(b)(1) and 12(b)(6) of

the Federal Rules of Civil Procedure, dismissing the complaint on the grounds that (i) plaintiff has failed to state a claim under the federal securities laws against the moving defendants; and (ii) in the absence of federal question or diversity jurisdiction, the pendent state and common law claims against them should be dismissed without prejudice to plaintiff's right to pursue such non-federal claims in state court.

For the reasons set forth below defendants' motion is granted.

## BACKGROUND

As a stock transfer agent, MHT is entrusted with the custody and care of publicly traded stock certificates, in transferable form, by the owners or depositors of such stock certificates. (Complaint ¶¶ 20–21, 28). Thomas Brancato was employed by MHT from 1974 to January, 1989. (Complaint ¶ 33). Brancato supervised MHT's stock transfer operations and had access to the books and records regarding those operations, and to the stock certificates held in safekeeping by MHT. (Complaint ¶ 34). MHT alleges that beginning in late 1987 and continuing through January 1989, Brancato embezzled numerous stock certificates which had been entrusted to MHT for safekeeping by MHT's client Depository Trust Company ("DTC"). (Complaint ¶ 45). MHT alleges that Brancato effected his scheme by cancelling stock certificates held in DTC's name and issuing new certificates at first in the names of his confederate Randolph Caden ("Caden") and Caden's wife, and later in the name of Brancato's Mackey Investment Fund ("Mackey"). Caden and his wife opened a brokerage account at Tucker Anthony in December 1987 and two accounts at Smith Barney in the fall of 1988. (Complaint ¶¶ 36, 40, 41). In December 1988, Brancato opened an additional brokerage account at Smith Barney under the Mackey name. (Complaint ¶ 42). The individual account executive for all these accounts was Robert Serio, who left Tucker Anthony and joined Smith Barney in the fall of 1988. (Complaint ¶ 37–39, 43). Brancato caused the reissued stock certificates to be delivered to and sold by Serio

for the benefit of the aforementioned accounts. (Complaint ¶¶ 48–72).

MHT discovered Brancato's defalcations in January 1989, and settled with DTC, the owner of the stock stolen by Brancato, by replacing it at a cost in excess of one million dollars. DTC then assigned to MHT such rights as it has in this matter. (Complaint ¶¶ 91–93).

In April, 1989, Brancato pleaded guilty to three criminal counts of an information in *United States v. Brancato*, 89 Cr. 288 (JMW), in this Court. The offenses to which Brancato pleaded guilty included (i) theft, embezzlement, or misapplication of securities entrusted to the custody or care of a bank by a bank officer; (ii) making false entries in the books, reports or statements of a bank with intent to injure or defraud; and (iii) sale of forged securities with intent to deceive other persons and organizations, all in connection with the matters described herein. (Complaint ¶ 95).

In May, 1990, Caden pleaded guilty to one count of conspiracy in violation of 18 U.S.C. § 371, contained in a seventeen-count indictment in *United States v. Caden*, 89 Cr. 790 (DNE), also in this Court. (Complaint ¶ 96).

MHT served its complaint on June 26, 1990 alleging a conspiracy by all defendants to violate Section 10(b) of the Exchange Act and Rule 10b–5 of the SEC; violations by Smith Barney, Tucker Anthony and Serio of New York Stock Exchange Rule 405, the "Know Your Customer" Rule; and defendants' common law fraud, aiding and abetting, conversion and negligence. (Complaint ¶ 16).

Neither Smith Barney nor Serio knew who Brancato was until he opened the Mackey account in December 1988 shortly before Brancato's illegal activity was discovered by MHT in January 1989. (Complaint ¶¶ 73–74, 91). MHT does not allege that the stock certificates delivered by Caden to Serio and Smith Barney were in any way irregular or that Serio or Smith Barney could have determined from the face of the certificates that they were stolen. Similarly, there is no allegation of any specific misrepresentations or omissions by defen-

dants Smith Barney, Tucker Anthony and Serio. Rather, MHT contends that Serio and Smith Barney breached a duty to the "investment public" by not exercising due diligence to learn essential facts about the Cadens and Brancato and their securities transactions as required under the "Know Your Customer Rule," New York Stock Exchange Rule 405. (Complaint ¶¶ 16, 73–77, 97–119). MHT alleges that if Smith Barney and Serio had exercised due diligence to acquire this information, they would have discovered that the trades by the Cadens and Brancato were uncharacteristically large; that the assets of the Cadens and Brancato were too modest to support a credible belief that the securities sold in their accounts belonged to them; and that neither the Cadens nor Brancato had documentation or a verifiable explanation supporting their claims of rightful ownership of the securities. (Complaint ¶ 104–109). MHT then asserts that if defendants had used this knowledge and made the "appropriate inquiries" to MHT, they would have learned that the securities were stolen in time to prevent the losses. (Complaint, 113–116).

## DISCUSSION

■ In order to prevail on a motion to dismiss, the moving party must demonstrate "beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must take the factual allegations of the non-moving party's pleadings as true and construe them in the light most favorable to that party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dwyer v. Regan,* 777 F.2d 825, 828–829 (2d Cir.1985), *reh'g denied,* 793 F.2d 457 (2d Cir.1986).

The essential elements of a claim under Section 10(b) and Rule 10b–5 promulgated thereunder are (1) damage to plaintiff; (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud; (3) made with an intent to deceive, manipulate or defraud (scienter); (4) in connection with the purchase or sale of securities; and (5) furthered by defendant's use of the mails in any facility of a national securities exchange. *Bochicchio v. Smith Barney, Harris Upham & Co.,* 647 F.Supp. 1426, 1429 (S.D.N.Y.1986).

Defendants' motion to dismiss relies upon two alleged deficiencies in MHT's complaint: (1) that neither MHT nor its assignor DTC has standing as a "seller" of securities to bring an action pursuant to Section 10(b) and Rule 10b–5, and (2) that the complaint does not allege any fraud "in connection with" the sale of the stock involved.

■ Only purchasers and sellers of securities have standing to bring a private cause of action under Section 10(b). *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), *reh. denied,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.) *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Pursuant to the statute, a purchase includes any contract to buy, purchase, or otherwise acquire. 15 U.S.C. § 78c(a)(13). Similarly, a sale includes any contract to sell or otherwise dispose of. *Id.* § 78c(a)(14).

DTC, a depository institution, was the owner of 100,000 shares of Long Island Lighting Company ("LILCO") stock which was included among the stock embezzled by Brancato. At the times of Brancato's fraudulent transfers of LILCO stock to Caden or Mackey, the stock was in the possession of MHT, as the stock transfer agent for LILCO, in a balance certificate account maintained by DTC. Shortly after MHT discovered the fraud, pursuant to MHT's agreement with DTC, MHT replaced the 100,000 shares of LILCO stock in DTC's account through open market purchases. Since MHT made DTC whole for the LILCO shares, DTC assigned its claim against all parties for the theft of the LILCO shares to MHT. Therefore, MHT

alleges, it is a seller of stock within Section 10(b) and Rule 10b–5 because MHT (1) stands in the shoes of the defrauded owner of the stock, (2) was in possession of the stock as transfer agent when Brancato made misrepresentations in the form of false entries in MHT's books and records in order to remove the stock from MHT's possession, and (3) is the sole party which has suffered pecuniary loss as a result of defendants' fraud. MHT asserts that the stocks involved in this case were sold twice in the course of defendants' fraud: first, when Brancato cancelled stock certificates held in safekeeping by MHT and issued new certificates; and, again, when Brancato and Caden sold the reissued certificates through their accounts at Smith Barney and Tucker Anthony.

■ MHT was the custodian of the securities owned and deposited by DTC and later stolen by Brancato. It was Brancato or Caden who subsequently sold the stolen securities, not DTC or MHT. A conversion of securities does not become a purchase or sale of securities merely because the bailee reimbursed the loss. *See Chase Manhattan Bank N.A. v. Fidata Corp.,* 700 F.Supp. 1252, 1258 (S.D.N.Y.1988) (Exchange Act passed for protection of investors "not mere bailees of securities").

■ In *Pross v. Katz,* 784 F.2d 455 (2d Cir.1986), the plaintiff alleged that he invested in certain real estate limited partnerships at the behest of a real estate developer who controlled the partnerships. The plaintiff's decision to invest was based on the developer's promises that he would manage the partnerships faithfully and reinvest any proceeds on the plaintiff's behalf. However, some time after the purchases were completed, the developer converted the plaintiff's investments by transferring ownership to himself and others. The United States Court of Appeals for the Second Circuit concluded that the complaint stated "an action for a conversion that occurred in circumstances that do not constitute a purchase or sale of securities." 784 F.2d at 458. In *Pross v. Katz,* the Second Circuit noted that the complaint alleged "no more than a conversion of

property that happened to involve securities." 784 F.2d at 459. The court was "unwilling to extend the reach of the securities laws to every conversion or theft of a security." 784 F.2d at 459. A fraudulent change in ownership (e.g. embezzlement or conversion) does not alone constitute sufficient basis for finding a sale of securities.

■ MHT's federal securities claim must be dismissed not only because neither MHT nor DTC has standing to sue as a seller of securities, but also because the alleged fraud was not "in connection with" the sale of securities. Section 10(b) of the Exchange Act and Rule 10b–5 proscribe fraud "in connection with" either the purchase or sale of securities. As the United States Court of Appeals for the Second Circuit explained in *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930 (2d Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984):

> The purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.

726 F.2d at 943.

■ The Supreme Court in *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) enunciated the principle that a court should be reluctant to imply a 10b–5 cause of action for wrongs that do not fall within Section 10(b)'s fundamental purpose of requiring full and fair disclosure to participants in securities transactions of information that would be useful to them in deciding whether to buy or sell securities. 430 U.S. at 477–478, 97 S.Ct. at 1302–1303. In applying this principle to the case at bar, the relevant inquiry is whether defendants' alleged fraud deprived plaintiff of information that might have been useful to it in deciding whether to purchase or sell securities which it actually did purchase or sell. *O'Brien v. Continental Illinois National*

*Bank & Trust Co.,* 593 F.2d 54, 60 (7th Cir.1979). In the case at bar there was no investment decision made by either DTC or MHT and no such decision was affected by any fraud on defendants' part. Rule 10b–5 is designed to protect market transactions, not trust relationships. Protection of those who have entrusted the care of their securities to others is a concern of state law, for which a cause of action under Section 10(b) ordinarily should not be inferred.

MHT relies principally on *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), to support its contention that the embezzlement by Brancato and Caden was "in connection with" the sale of the stolen securities. MHT argues that it has satisfied the "in connection with" requirement of Section 10(b) and Rule 10b–5 because it has "alleged a fraudulent scheme the accomplishment of which is directly related to the trading process." MHT Brief at 17. Plaintiff argues that defendants' alleged scheme could not have been carried out without the transfers of the embezzled stock to Mackey and Caden as owners of record and the sale of the embezzled stock on the NYSE through the brokerage accounts. MHT Brief at 16–17. Plaintiff asserts that the "in connection with" element requires only that a party "suffer[ ] an injury as a result of deceptive practices touching its sale of securities." 404 U.S. at 12–13, 92 S.Ct. at 169.

Recent decisions of the Second Circuit interpreting the *Bankers Life* holding have made it clear, however, that something more than a "de minimis" relationship between the fraudulent scheme and the purchase or sale of securities is required.

*E.g., Pross v. Katz,* 784 F.2d 455 (2d Cir. 1986); *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930 (2d Cir.) *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).

 Misrepresentations or omissions involved in a securities transaction but not pertaining to the securities themselves cannot form the basis of a violation of Section 10(b) or Rule 10b–5. *Chemical Bank,* 726 F.2d at 943; *Pross v. Katz,* 784 F.2d at 459; *Crummere v. Smith Barney,* 624 F.Supp. 751, 755 (S.D.N.Y.1985); *Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563 (E.D.N.Y.1985); *Smith v. Chicago Corp.,* 566 F.Supp. 66 (N.D.Ill.1983). The Second Circuit court has noted that the "misrepresentation must relate to the securities alleged to satisfy the purchase and sale requirement, and not just to the transaction in its entirety." *Crummere v. Smith Barney,* 624 F.Supp. at 755 (*citing Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d at 943). "The 'in connection with' requirement mandates that the alleged fraud concern the fundamental *nature* of the [securities]: namely, characteristics and attributes that would induce and investor to buy or sell the particular [securities.]" *Kearney v. Prudential–Bache Securities, Inc.,* 701 F.Supp. 416, 424 (S.D.N.Y.1988); *see also, Citibank, N.A. v. K–H Corp.,* 745 F.Supp. 899, 903 (S.D.N.Y.1990) ("To satisfy the "in connection with" requirement, plaintiff may not allege fraudulent acts which merely happened to involve [securities] in some way"). This requires that the steps taken by defendants to effectuate the alleged fraudulent scheme must be "integral to the purchase and sale of the security in question...." [1] *Pross v. Katz,* 784 F.2d at 459.

1. *Perez–Rubio v. Wyckoff,* 718 F.Supp. 217 (S.D.N.Y.1989), does not dictate a contrary result. In *Perez–Rubio,* the plaintiff alleged an ongoing and complex fraud by which the defendants, *inter alia,* manipulated various securities accounts and loaned the assets of these accounts to a broker dealer which listed the assets as part of its equity in order to satisfy the New York Stock Exchange's capital requirements. These loans were made without the knowledge or consent of the plaintiffs. The plaintiffs were falsely advised that their funds were being conservatively invested. Fictitious account statements were provided to the plaintiffs which indicated that their investments were appreciating in value. These misrepresentations apparently induced the plaintiff to invest additional funds with the defendants. An investment of additional funds into a brokerage account which is a security constitutes a "purchase" of a security to the extent of the amount of the funds invested. *Savino v. E.F. Hutton & Co.,* 507 F.Supp. 1225, 1240 (S.D.N.Y.1981); *Troyer v. Karcagi,* 476 F.Supp. 1142, 1148 (S.D.N.Y.1979). The court concluded that the defendants' misrepresentations were directly related to the trading process

Another case in this Court involving a comparable fact situation was *Bochicchio v. Smith Barney, Harris Upham & Co.*, 647 F.Supp. 1426 (S.D.N.Y.1986). There Judge Leisure dismissed the complaint on the grounds that the "in connection with the purchase or sale of securities" requirement had not been satisfied. The plaintiffs' broker purportedly represented to plaintiffs, *inter alia*, that he would manage their account faithfully. However, he made unauthorized sales of securities, forged endorsements on proceed checks, converted the proceeds and made unauthorized withdrawals from plaintiffs' accounts. The court concluded that the complaint alleged no more than a conversion of property that happened to involve securities. The court noted that the plaintiffs failed to allege that their broker made any misrepresentations or omissions regarding the nature or character of the securities involved. In concluding that the plaintiffs' claim was essentially for breach of fiduciary duty, negligence or conversion—areas traditionally relegated to state law, the court stated:

> In sum, the conversion of securities, even if it occurs from a brokerage account, does not state a claim under § 10(b).

647 F.Supp. at 1430.[2]

■ DTC entrusted its securities to the custody of MHT. MHT employed Brancato to oversee the handling of those securities. The damage suffered by DTC and MHT flowed not from a decision to buy or sell securities but rather from the decision to place or leave the stock certificates in Brancato's care. DTC entered into this bailment in reliance upon MHT who in turn relied upon Brancato. Any breach by Brancato of his fiduciary duty as an employee of MHT is not by itself sufficient to establish the basis for a federal securities claim. Any generalized misrepresentations by Brancato concerning his activities or intentions in managing MHT's Stock Transfer Department, including making false entries in the stock transfer ledger and on stock transfer correction tickets, would have implicated only MHT's decision to rely on Brancato as an employee and not DTC's or MHT's decision to purchase or sell a particular security. Hence, such misrepresentations are insufficient to support a claim under Section 10(b) and Rule 10b–5.

■ MHT argues that, should this Court dismiss MHT's federal securities law claims against Smith Barney, Tucker Anthony, and Serio, MHT's state law claims against these defendants should not be dismissed. MHT maintains that the Court has pendent jurisdiction over these claims because "defendants do not, and cannot, dispute that Brancato and Caden committed securities fraud within Section 10(b) and Rule 10b–5."

■ However, the Court concludes that MHT has failed to assert a valid cause of action for violation of the federal securities laws against any party to this action. Regardless of whatever state laws may be implicated by defendants' conduct, such alleged wrongdoing does not confer "purchaser-seller" status on plaintiff MHT (either directly or as an assignee of DTC), nor does the alleged wrongdoing establish the "in connection with" requirement of federal liability under Section 10(b) and Rule 10b–5. Since there is no diversity of citizenship alleged to serve as an alternative ground for federal jurisdiction, the action is dismissed in its entirety pursuant to Rule 12(h)(3), Fed.R.Civ.P., and the principles enunciated in *United Mine Workers v.*

and in connection with the purchase and sale of securities. The *Perez–Rubio* court was "mindful," however, that if the case before it had been a simple conversion of property that happened to be securities—as is the case before this Court—that no federal securities claim would lie. 718 F.Supp. at 237.

2. MHT claims that it did not allege a cause of action against defendants based upon New York Stock Exchange Rule 405. MHT claims to have cited defendants' alleged breach of their duties as prescribed by New York Stock Exchange Rule 405 in order to establish "callous, deliberate, knowing and/or grossly reckless disregard" so as to fulfill the element of scienter necessary to maintain a private cause of action for securities fraud. MHT Brief at 19. As this Court has already determined that the complaint satisfies neither the "purchase and sale" nor the "in connection with" requirement of a § 10(b) action, however, it does decide the question of scienter.

*Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### CONCLUSION

For the reasons set forth above, the motion of defendants Smith Barney, Tucker Anthony, and Serio to dismiss MHT's federal securities law claims against them is granted with prejudice pursuant to Rule 12(b)(6), Fed.R.Civ.P.[3] This Court, concluding that the complaint fails to state a federal cause of action against any defendant, hereby dismisses, *sua sponte* and without prejudice, the remaining portions of the complaint pursuant to Rule 12(h)(3) Fed. R.Civ.P.

SO ORDERED.

---

**3.** This Court does not believe that the deficiencies in the complaint can be rectified by amendment.