Sandra **ABRASH**, Norma Veridiano, Sandy Airbrush, Inc. and Art & Sole, Ltd., Plaintiffs,

v.

Byron **FOX**, Galvin Fox & Palmer, John Galvin and Sheldon Palmer, individually and as partners of Galvin Fox & Palmer, and Galvin & Palmer, as Successor in Interest to Galvin Fox & Palmer, Defendants.

No. 92 Civ. 3863(MEL).

United States District Court, S.D. New York.

Nov. 2, 1992.

John G. Rich, New York City, for plaintiffs.

Bressler, Amery & Ross, Florham Park, N.Y. and Bressler, Amery & Rothenberg (George R. Hirsch, on brief and of counsel, David J. Libowsky, on brief), New York City, for defendant Byron Fox.

LASKER, District Judge.

Sandra Abrash, Norma Veridiano, Sandy Airbrush, Inc. ("Airbrush, Inc.") and Art & Sole, Ltd. ("Art & Sole") sue Byron Fox, and his law firm, Galvin Fox & Palmer[1], alleging securities fraud, common law fraud, malpractice, and breach of contract. Plaintiffs contend that Fox induced Abrash and Veridiano to purchase securities in Airbrush, Inc. by making various misrepresentations in violation of Section 10(b) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b–5.

Fox moves to dismiss the complaint for lack of subject matter jurisdiction on the grounds that Plaintiffs' claim for securities fraud, the sole predicate for federal jurisdiction[2], fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1), 12(b)(6).

### I.

Abrash formed Art & Sole in 1988 to produce hand painted pictures and designs on athletic footwear. Abrash sought a person with suitable expertise to evaluate and follow through on various unfolding business opportunities and was introduced to Fox through Veridiano in March 1989. According to the Complaint, Fox represented to Abrash and Veridiano:

(a) that Fox was duly competent and qualified to represent plaintiffs ... and duly licensed to practice law in ... New York;

(b) that Fox would do all the necessary work to establish the francise (sic) organization and arrange for the filing of the patent application by July 1 [of 1989];

(c) that Fox would act as business and legal advisor and negotiator with regard to ... [new] business opportunities ...;

(d) [and] that $50,000 in capital, which included $15,000 to be paid immediately to Fox in legal fees, was sufficient to establish the franchise and initially capitalize the business.

Plaintiffs contend that these representations were materially false or misleading.

In June 1989, Airbrush, Inc. was formed on Fox's advice as a start-up vehicle for the franchise organization. Veridiano purchased 100 shares, representing 10% of the outstanding stock for $50,000, and Abrash purchased 900 shares in consideration for

---

1. The other Defendants are John Galvin and Sheldon Palmer, individually and as partners of Galvin Fox & Palmer, and Galvin & Palmer, as successor in interest to Galvin Fox & Palmer.

2. Plaintiffs contend that jurisdiction is also based on diversity of citizenship. (Complaint ¶ 4). However, all the Plaintiffs and Defendants, with the exception of Byron Fox, are citizens of New York. (Complaint ¶¶ 7–15).

the transfer to Airbrush, Inc. of the right to use or license the Process developed by Art & Sole, Inc. Plaintiffs contend that they would never have entered into this transaction, but for Fox's misrepresentations.

## II.

■ To sustain a claim under Section 10(b) and Rule 10b–5, a plaintiff must establish that the alleged material misstatement or omission took place "in connection with the purchase or sale of a security." *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). Fox contends that the alleged misrepresentations were not made "in connection with the purchase or sale of a security," but rather in relation to his legal representation of the Plaintiffs. Abrash and Veridiano do not contest the legal authorities cited by Fox, but deny that the relationship of the misrepresentations to the securities was too remote. They argue that:

> simply because the misrepresentations were also made in connection with the legal retention as well as in connection with the securities transaction does not mean that [they] were not integral to the securities transaction.

> \*   \*   \*   \*   \*   \*

> The representations were a direct inducement to proceed with the securities transaction. This case is no different in that respect than one in which a defendant induces persons to invest based on business plans that it has no intention of implementing.

Pl.'s Mem. in Opp. 5–6.

■ To establish misrepresentations "in connection with" a securities transaction, a plaintiff must demonstrate a causal connection between the alleged fraudulent conduct and the securities transaction at issue, *In re Financial Corporation of America Shareholder Litigation*, 796 F.2d 1126, 1130 (9th Cir.1986). The causal connection may not be established solely on the basis

of "but-for" allegations, *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985). The proof must demonstrate something more than a "de minimis" relationship between the fraud and the purchase or sale of securities. *Manufacturers Hanover Trust Company v. Smith Barney, Harris Upham & Company, Incorporated*, 770 F.Supp. 176, 181 (S.D.N.Y.1991).

■ Moreover, even when there is a clear causal connection between the misrepresentations and the investment decision, there is no securities law violation unless the misrepresentations or omissions involved in a securities transaction pertain to the securities themselves. *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.1983). The "in connection with" requirement is not satisfied unless "the alleged fraud concern[s] the fundamental *nature* of the [securities]: namely, characteristics and attributes that would induce an investor to buy or sell the particular [securities]," *Kearney v. Prudential–Bache Securities, Inc.*, 701 F.Supp. 416, 424 (S.D.N.Y.1988) *quoted in Manufacturers Hanover*, 770 F.Supp. at 181. The central issue in the case at hand is thus whether Fox's misrepresentations about his intentions to assist in making Airbrush, Inc. constituted misrepresentations about the nature of the securities.

The decisions cited by the parties shed little light on that issue because they deal with misrepresentations that only peripherally involve securities and do not concern misrepresentations which may influence a party's decision to purchase securities, but have nothing to do with the nature or quality of the security or of the issuer of the security, which are the decisive factors here. *See Chemical Bank*, 726 F.2d 930 (misrepresentations made by a debtor company about its own financial prospects to renew a loan involving pledge of securities to creditor as security for refinancing); *Manufacturers Hanover*, 770 F.Supp. 176 (fraudulent entries into stock transfer ledger in course of embezzlement of stock certificates by employee); *Crummere v. Smith Barney, Harris Upham & Co. In-*

*corporated,* 624 F.Supp. 751 (S.D.N.Y.1985) (employee diverted plaintiff's investment funds to personal account for "speculative, inappropriate churning" of securities).

▆ Here, Plaintiffs have alleged no more than that Fox made misrepresentations about his own qualifications and his intentions to act as a business and legal advisor to Abrash and Veridiano. These misrepresentations relate only to Fox himself and cannot sensibly be construed as going to the nature of the securities, or to their "characteristics and attributes." *Kearney,* 701 F.Supp. at 424. Such allegations simply do not state a securities law cause of action. Accordingly, the securities law claim is dismissed.

Since this Court's subject matter jurisdiction is premised on Plaintiff's claim under the federal securities law, Defendant's motion is granted and the Complaint is dismissed as to the federal claim, and the state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

It is so ordered.