SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

Jeffrey S. NORTON, Donald C. Reynolds,
John A. Tartaglia, and Edward T.
Menster, Defendants.

No. 95 Civ. 4451 (SHS).

United States District Court,
S.D. New York.

Sept. 29, 1998.

Kay L. Lackey, S.E.C., New York City, for Plantiff.

Janice Digennaro, Rivkin, Radler & Kremer, New York City, for Defendant.

## OPINION

STEIN, District Judge.

The Securities and Exchange Commission ("SEC") commenced this action for alleged violations of the anti-fraud provisions of the federal securities laws.[1] One year ago, this Court granted in part defendant John A. Tartaglia's motion to dismiss the complaint against him pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. *See SEC v. Norton,* 1997 WL 611556 (S.D.N.Y. Oct.3, 1997). Tartaglia now moves pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing the remaining claims of the complaint against him.[2] The SEC opposes Tartaglia's motion for summary judgment, and in a sur-reply letter brief to this Court dated September 10, 1998, requests leave to amend the complaint. For the reasons set forth below, defendant's motion for summary judgment is granted in part and denied in part, and plaintiff's request to amend the complaint is denied.

*Motion to Amend the Complaint*

■ In its October 3, 1997 ruling, familiarity with which is assumed, this Court characterized the SEC's claims as alleging two fraudulent transactions: "[f]irst, Tartaglia allegedly fraudulently induced Thurman to transfer $1 million into an escrow account in order to facilitate the alleged purchase of [prime bank instruments] by Norton. Sec-

ond, defendants replaced Thurman's funds in the escrow account with 1000 shares of Sabre stock, whose worth was misrepresented via a forged Deloitte & Touche letter." *SEC v. Norton,* 1997 WL 611556, at *4 (S.D.N.Y. Oct.3, 1997). With respect to the first transaction, this Court found that it did not fall within the purview of the securities anti-fraud statutes since the fraudulent scheme alleged was not made "in connection with the purchase or sale of a security." *Id.* However, this Court did find that the SEC had stated a claim pursuant to the anti-fraud statutes regarding the second transaction. That Opinion held that an action against Tartaglia pursuant to the anti-fraud securities laws remained only insofar as the complaint alleged that Tartaglia participated in a fraudulent scheme to replace Thurman's funds in an escrow account with 1000 shares of Sabre stock based on a forged auditor's letter. *See id.* at *7.

Of particular relevance to the SEC's request to amend the complaint is this Court's finding that the SEC had not alleged that Thurman's funds in the escrow account were to be used to purchase prime bank instruments ("PBI's"), but rather had alleged that Thurman's funds were to be used to "facilitate" the purchase by "show[ing] the seller of the instruments that $1 million was held in an escrow account." *See id.* at *4 (quoting Complaint, ¶ 12). Thus, this Court wrote that this case differed from "those cases in which individuals are fraudulently misled to attempt to purchase PBI's based upon representations of expected profit." *Id.* Now, in an attempt to place this case within the group of distinguishable cases, the SEC seeks to amend the complaint to assert that Tartaglia made misrepresentations to Thurman to induce Thurman to invest $1 million in a PBI.[3]

1. The complaint alleges violations of Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), 77q(a)(2), and 77q(a)(3)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b–5 promulgated thereunder [17 C.F.R. § 240.10b–5].

2. Tartaglia is the sole remaining defendant in this action. Consent judgments were entered against Edward T. Menster and Jeffrey S. Norton on January 22, 1996 and March 26, 1996, respectively; a default judgment was entered against Donald C. Reynolds on February 21, 1996.

3. In its September 10, 1998 sur-reply letter to this Court, the SEC acknowledges that "[t]here is

The SEC's request to amend at this very late stage in the litigation must be denied. It would be highly prejudicial to Tartaglia to grant the SEC's request to amend the complaint given that discovery in this case has been proceeding for three years, the last year of which has been conducted pursuant to this Court's October 3, 1997 Opinion & Order, which substantially narrowed the scope of the complaint to the allegations concerning the second transaction. *See Turkenitz v. Metromotion, Inc.*, 1997 WL 773713, at *9 (S.D.N.Y. Dec.12, 1997) (noting that prejudice to a party is the most important reason for denying motion to amend).

In addition, the SEC has failed to explain why it did not move to amend the complaint sooner. Its allegations of "newly" discovered evidence stem from a deposition of Thurman that transpired in February 1996. The SEC relies on the fact that because this evidence was discovered from a third party witness, it is justified in seeking an amendment at this late stage. Yet, the SEC has made no showing that it only recently received this third-party discovery. In light of this Court's ruling in October 1997, it appears that the SEC seeks to amend the complaint in its sur-reply letter solely to avoid an adverse ruling on this summary judgment motion. Given these facts, this Court denies the SEC's request to amend the complaint. *See Berman v. Parco*, 986 F.Supp. 195, 217 (S.D.N.Y.1997) (" 'Leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgment, particularly when the new claim could have been raised earlier.' ") (quoting 1 M. Silverberg, Civil Practice in the Southern District of New York § 6.26).

*Summary Judgment Motion*

Summary judgment will be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)). In deciding whether a genuine dispute remains as to a material fact, the Court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Tartaglia makes four arguments in support of his motion for summary judgment. First, he contends that the SEC's claims pursuant to Section 10(b) of the Exchange Act and Rule 10(b)–5 promulgated thereunder, and Section 17(a) of the Securities Act should be dismissed because Tartaglia made no "misrepresentations in connection with" the substitution of the Sabre stock. Second, he asserts that the SEC's claims for aiding and abetting and for conspiracy to violate the securities laws should be dismissed. Third, he urges that the SEC's claims pursuant to Section 17(a)(2) of the Securities Act must be dismissed because he did not obtain any money or property from the alleged fraud. Finally, he maintains that the remedy of disgorgement may not be maintained against him because he never obtained any "ill-gotten gains." Each of Tartaglia's contentions will be addressed below.

*A. The "In Connection With" Requirement*

■ Tartaglia contends that the undisputed facts establish that he did not make any misrepresentations to anyone "in connection with" the sale of a security. "Misrepresentations or omissions involved in a securities transaction but not pertaining to the securities themselves cannot form the basis of a violation of Section 10(b) or Rule 10b–5." *Manufacturers Hanover Trust Co. v. Smith Barney, Harris Upham & Co., Inc.*, 770 F.Supp. 176, 181 (S.D.N.Y.1991) (citing *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.1984)). The alleged

---

a variation between the Commission's allegations and Thurman's testimony regarding the exact wording of Tartaglia's misrepresentation about whether Thurman's funds would be withdrawn from the escrow account and used to purchase a 'prime bank note' or be held in the escrow and used to support a 'prime bank note' transaction."

Thus, the SEC states that "[i]f the Court believes that the Commission should be bound to the precise language of its Complaint, the Commission will request leave to amend its Complaint to conform its allegations to the evidence produced during discovery."

misrepresentation must pertain to the "fundamental nature" of the security, " 'namely, characteristics and attributes that would induce an investor to buy or sell the particular [securities].' " *Production Resource Group, L.L.C. v. Stonebridge Partners Equity Fund, L.P.,* 6 F.Supp.2d 236, 239 (S.D.N.Y.1998) (quoting *Manufacturers Hanover Trust Co.,* 770 F.Supp. at 181).

Relying on this case law, Tartaglia contends that the SEC has failed to demonstrate that he made any misrepresentation regarding the Sabre stock transaction. Although the SEC has elicited very little evidence demonstrating that Tartaglia made misrepresentations regarding the Sabre stock, it has presented testimony from the escrow holder that creates a genuine issue of material fact. The SEC relies on a statement from the escrow holder that "[Tartaglia] indicated to me that what I was already holding was of sufficient value to support an additional transfer of funds in excess of $500,000, yes." Affidavit of William D. Kitay in Opposition to defendant John A. Tartaglia's Motion for Summary Judgment dated July 1, 1998 ("Kitay Aff."), Exh. 5 at 550 (deposition transcript of Rory J. Cutaia, Esq. on March 4, 1996). Defendant maintains that this testimony should not be credited because in an earlier deposition, the escrow holder specifically stated that Tartaglia did not make any statements regarding the value of the Sabre Credit Corp. stock. In particular, the escrow holder was asked and answered the following question:

Q. Did Tartaglia say anything to you on or about September 21st concerning the value of the Sabre Credit Corp. stock?

A. No. No. He said that—the only thing that he said about the Sabre Credit Corp. stock was that that was to support the additional transfer of funds as well, but he didn't say, you know, it is worth a million dollars or anything like that. He just said it was supposed to act as the collateral for the next transfer, that Mr. Thurman was aware of it, and that—not to interfere with the deal.

Kitay Aff., Exh. 4 at 73 (deposition transcript of Rory Cutaia on October 10, 1995).

While the testimony elicited from the escrow holder is contradictory, this Court may not resolve issues of fact or determine issues of credibility on a motion for summary judgment. Thus, defendant's request for summary judgment on this basis is denied.

### B. Aiding and Abetting and Conspiracy

■ Tartaglia seeks to dismiss the SEC's claims that he (1) aided and abetted the violation of the securities laws and (2) conspired to violate them. *See* Complaint ¶¶ 54, 61, 69. He relies on (1) the Supreme Court's holding in *Central Bank, N.A. v. First Interstate Bank, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), that a private litigant may not maintain an action for aiding and abetting pursuant to Section 10(b) of the Securities Exchange Act of 1934 or Rule 10b–5 promulgated thereunder, and (2) a recent decision by the Second Circuit that extended the application of *Central Bank* to preclude claims for conspiracy in private actions brought pursuant to Section 10(b) and Rule 10b–5. *See Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin,* 135 F.3d 837 (2d Cir.1998). *Central Bank* and *Dinsmore,* however, are limited to actions brought by private litigants. *See Central Bank,* 114 S.Ct. at 1455 (holding that "a private plaintiff may not maintain an aiding and abetting suit under § 10(b)"); *Dinsmore,* 135 F.3d at 842.

Moreover, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), authorizes the SEC to prosecute aiding and abetting and conspiracy claims. Section 104 of the PSLRA provides that in SEC enforcement actions, "any person that knowingly provides substantial assistance to another person in violation of a provision of [the Exchange Act], or of any rule or regulation issued under [the Exchange Act], shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided." 15 U.S.C. § 78t(f).

Tartaglia argues, however, that the PSLRA, which was enacted in December 1995, should not be applied retroactively in this action to events that transpired prior to its enactment. The Second Circuit has not

yet ruled on this issue. *See SEC v. U.S. Environmental, Inc.,* 1998 WL 559027, at *6 (2d Cir. Aug.25, 1998) (noting that "[i]t remains unclear, however, whether the SEC could bring aiding/abetting claims in cases based on conduct occurring prior to the enactment of the Reform Act," but not reaching the issue since it was not raised on appeal).

Absent clear Congressional intent, retroactivity is disfavored where the new provision "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). In this case, however, Congress has not "expressly prescribed the statute's proper reach," and the PSLRA does not "attach[ ] new legal consequences to events completed before its enactment." *Id.* at 1505 and 1499.

The complaint in this action was filed in June of 1995. At that time, Tartaglia could have reasonably expected to face aiding and abetting charges by the SEC. Although the Supreme Court had decided *Central Bank* by that time, the legal consequences that defendant faced in an SEC enforcement action were not changed by the Supreme Court's decision, because that holding applied only to private causes of action. Thus, applying the PSLRA retroactively does not increase Tartaglia's liability for past conduct or impose any new duties on him: at the time of his actions the SEC could maintain an action against him for both conspiracy and aiding and abetting a violation of the securities laws. *See U.S. S.E.C. v. Fehn,* 97 F.3d 1276, 1286 (9th Cir.1996) (retroactively applying Section 104 of the PSLRA where "at the time the SEC launched its investigation of [plaintiff's] activities, *Central Bank* had not yet been decided and [plaintiff] had every reason to expect that the SEC had the authority to enjoin the aiding and abetting of violations of Sections 10(b) . . . of the Securities Exchange Act."), *cert. denied* — U.S. ——, 118 S.Ct. 59, 139 L.Ed.2d 22 (1997).[4]

Thus, defendant's request for summary judgment dismissing the claims of conspiring to violate the securities laws and aiding and abetting their violation is denied.

### C. Section 17(a)(2)

 Tartaglia contends that the SEC's claim pursuant to Section 17(a)(2) of the Securities Act must be dismissed because the SEC has failed to prove that he actually obtained money or property by means of an untrue statement. *See* 15 U.S.C. § 77q(a)(2). As noted above, a material issue of fact exists regarding whether Tartaglia made any misrepresentations in connection with the substitution of Thurman's funds in the escrow account with a valueless security. Additionally, the SEC has raised an issue regarding Tartaglia's control over Thurman's funds and his role in directing that the money be transferred out of the escrow account. Thus, although it is undisputed that Tartaglia did not make a profit from this fraudulent stock transaction, an issue of fact remains as to whether Tartaglia "obtained money" by means of a misrepresentation such that the requirements of Section 17(a)(2) would be met. *See SEC v. Glantz,* 1995 WL 562180, at *5 (S.D.N.Y. Sept.20, 1995). Accordingly, Tartaglia's request for dismissal of the SEC's claim pursuant to Section 17(a)(2) is denied.

### D. Disgorgement Claim

 Defendant seeks dismissal of the SEC's claim for disgorgement of ill-gotten gains in its prayer for relief. The purpose of disgorgement is to force a defendant to relinquish the amount by which he was unjustly enriched. This remedy is appropriate only in situations in which a defendant has benefitted from ill-gotten gains and should not be used as punishment. *See SEC v. Downe,* 969 F.Supp. 149, 158 (S.D.N.Y.1997), *aff'd* 151 F.3d 42 (2d Cir.1998). The SEC has specifically admitted that "[n]one of Thurman's funds were transferred directly from the escrow account to Tartaglia." Plaintiff's State-

---

4. This Court disagrees with *Fehn* to the extent it implies that because *"Central Bank* ignited a temporary hope," defendant should not have expected the SEC to prosecute aiding and abetting charges against him. 97 F.3d at 1286. Despite any "temporary hope," there was no basis for defendant to believe in June 1995 that he would be free from prosecution in an SEC enforcement action for aiding and abetting a securities law violation.

ment of Disputed and Undisputed Facts Pursuant to Local Civil Rule 56.1, ¶ 19. The SEC has made no other showing that Tartaglia received any ill-gotten gains. Accordingly, Tartaglia's request to dismiss the claim for disgorgement is granted.

*Conclusion*

For the reasons set forth above, the SEC's request to amend the complaint is denied and Tartaglia's motion for summary judgment is denied in all respects except to the extent it seeks to dismiss the disgorgement claim against him, and to that extent it is granted.