HMCA (CAROLINA), INC., HMCA (P.R.), Inc. and Corporacion de Servicios Medico–Hospitalarios de Fajardo (CSMHF), Plaintiffs,

v.

Jose SOLER–ZAPATA, in his individual capacity and as Secretary of the Department of Health of the Commonwealth of Puerto Rico; Aurelio Llado, in his individual capacity and as Executive Director of the Administración de Facilidades y Servicios de Salud de Puerto Rico (AFASS); Hector Rivera–Cruz, in his individual capacity and as Secretary of Justice of Puerto Rico, John Doe and Richard Roe, Defendants.

Civ. No. 90–1878CCC.

United States District Court, D. Puerto Rico.

Nov. 25, 1991.

---

Wallace González–Oliver and Pedro A. Jiménez, San Juan, P.R., for plaintiffs.

Carlos E. Rodríguez–Quesada, Dept. of Justice, Comm. of P.R., and Kenneth Colón of Ramírez & Ramírez, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

The case now before us is an action for alleged violation of civil rights, securities fraud, rescission of settlement agreement, and declaratory and injunctive relief and damages. Plaintiffs are HMCA (Carolina), Inc., HMCA (Puerto Rico), Inc. and Corporación de Servicios Médico Hospitalarios de Fajardo (CSMHF). Plaintiffs have alleged in their complaint that defendants José Soler–Zapata, Secretary of the Department of Health of the Commonwealth of Puerto Rico, Aurelio Lladó, Executive Director of the "Administración de Facilidades y Servicios de Salud de Puerto Rico" (AFASS); and Héctor Rivera–Cruz, Secretary of Justice of the Commonwealth of Puerto Rico, engaged in artifices and schemes to defraud and conspired to "financially strangle" them. On that same date plaintiffs requested the issuance of a temporary restraining order which was opposed by defendants and denied by the Court.

On July 2, 1990 we issued an order granting plaintiffs a term of ten (10) calendar days to show cause why this action should not be dismissed for lack of subject matter jurisdiction and failure to state a

claim upon which relief could be granted. We then noted that the allegations common to all causes of action pointed to a claim for breach of contract. This seemed contrary to the well-settled principle that a mere breach of contract does not give rise to a constitutional claim. The allegations of securities fraud found in paragraphs 51 through 53 of the complaint, as stated, did not appear to meet the jurisdictional requirements since they enunciated no violations of section 10(b) of the Securities Exchange Act and Rule 10b–5, promulgated thereunder. Plaintiffs' third cause of action—fraud in the inducement of settlement—is in reality a motion to set aside a judgment in another case and to reinstate the action, a matter which should more properly be raised in the suit in question.

The parties filed their respective memoranda pursuant to the Order to Show Cause. After other procedural incidents, the Court finds as follows:

It is alleged in the complaint that the Department of Health of the Commonwealth of Puerto Rico negotiated with HMCA (P.R.) for the privatization of the Carolina Area Hospital, and as a result thereof both parties executed Contract No. 83004 whereby HMCA (P.R.) agreed to operate the Hospital privately as an independent contractor. Under said contract, in exchange for the Department's payment to HMCA of a fixed sum negotiated on a yearly basis and the use by HMCA of the building owned by the Public Buildings Authority, HMCA would provide certain health services at a secondary level to medically indigent patients of Carolina. Contract 83004 (the Carolina Contract) was executed by Max Olivera–Mariani, President of HMCA (P.R.) and Jaime Rivera–Dueño, then Secretary of Health. Co-defendant HMCA (Carolina) was thereupon created with the consent of the Department of Health for the specific purpose of assuming the rights and obligations arising under the Carolina Contract relating to the private operation of the hospital.

According to plaintiffs, in 1985 the Fajardo Sub–Regional Hospital, operated by co-

plaintiff Corporación de Servicios Médico Hospitalarios de Fajardo (CSMHF), was in the midst of a serious fiscal and operational crisis, due to certain contractual disputes between that company and the Department of Health. Said disputes ended in judicial proceedings, one of which plaintiffs seek to reinstate in the present case.[1] CSMHF also filed a Bankruptcy petition under Chapter 11 of the U.S. Bankruptcy Code. It is alleged that the Department of Health, within the participation and advice of co-defendant Héctor Rivera–Cruz, devised a plan to cut off all ties with the owners and management of CSMHF, bring the Fajardo Hospital out of bankruptcy, and obtain a settlement and release of the lawsuit corresponding to Civil Case No. 86–0921JP. "To that effect," the complaint avers:

> the Health Department pressured HMCA and attempted to convince it to purchase the shares of CSMHF and to take over the operation of the Fajardo Hospital. Although HMCA was reluctant to assume such an undertaking, it did not wish to oppose the wishes of the Health Department, since that agency had under its jurisdiction and control matters upon which plaintiffs' livelihood depended.

(Complaint, paragraph 23).

Plaintiffs further allege that the Department of Health, with the knowledge and participation of defendants José Soler–Zapata, Aurelio Lladó and the advice and direct participation of defendant Secretary of Justice Héctor Rivera–Cruz, represented HMCA that it could finance CSMHF's debt and defray costs for the operation of the Fajardo Hospital through the additional funds represented by Amendment "H" of September 24, 1987 to Carolina Contract No. 83004. This Amendment H provided for additional monthly payments of $175,000.00 to HMCA for the tertiary services rendered by it in the Carolina Area Hospital. In plaintiffs' words, they were

> pressured to purchase the shares of CSMHF, assume 100% of the debt of that company, bring it out of bankruptcy, dis-

1. Civil No. 86–0921JP.

miss the federal lawsuit against the Health Department with prejudice,[2] and assume all of the obligations of CSMHF's contract, rescuing the troubled operation of the Fajardo Hospital. Upon information and belief, unbeknownst to HMCA at the time, defendants Soler–Zapata, Lladó, Rivera–Cruz and others still unknown, were scheming to eventually take over the operation of both the Fajardo and Carolina Hospitals from HMCA after they resolved the takeover of the Fajardo Hospital from CSMHF. (Complaint, paragraph 31).

Plaintiffs also allege that on December 29, 1989, defendant Lladó, acting in concert with the other defendants, instructed Banco de Ponce, a trustee bound irrevocably to pay HMCA the monthly sum of $163,350 for hospital equipment leased to the Department of Health in the Carolina Area Hospital, to suspend such payments, even though the Department was contractually bound to continue making said payments, even though there had been no legal determination that HMCA (Carolina) had violated any relevant contractual provision. As part of defendants' illegal scheme, it is alleged that defendants José Soler–Zapata and Aurelio Lladó informed HMCA in a March 29, 1990 letter that they had determined that it had not properly rendered tertiary level services in the Carolina Area Hospital or adequately made available the additional two floors of hospital beds agreed upon, for which reason they were immediately proceeding to cut off an additional monthly amount of $400,000.00 to HMCA. Simultaneously, defendants Soler–Zapata and Lladó, allegedly aided and abetted by co-defendant Rivera–Cruz, required HMCA to immediately pay the Department of Health the sum of $12,372,211.81, falsely asserting that such sum was due them because of HMCA's alleged deficiency in properly providing tertiary level services and additional hospital beds. Defendants Soler–Zapata and Lladó unilaterally announced the termination of Contract No. 83004 for the operation of the Carolina Hospital. Plaintiffs allege that defendants

knew that plaintiffs had fully complied with their obligation to provide medical services at the tertiary level in the Carolina Area Hospital and that they had made available the additional beds. They contend that the unilateral termination of Contract No. 83004 without cause was an attempt to gain by force, as defendants had done with CSMHF in Fajardo, that to which they were not legally entitled.

Based on the allegations as summarized above, plaintiffs claim that defendants have deprived them of their property interests without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and that defendants' conduct constitutes a taking of their property without just compensation.

As a second cause of action, plaintiffs aver that defendants committed securities fraud by inducing plaintiffs to purchase the shares of CSMHF and by representing to them that it would be legal and allowable to finance the debt and operations of the Fajardo Hospital with the additional payments to be made to HMCA under Amendment H to Contract 83004 by the Department of Health for tertiary services rendered in the Carolina Hospital. Defendants allegedly had at the time a plan to charge plaintiffs "with not providing adequate tertiary level services, unilaterally cutting off the funds received pursuant to Amendment H under that guise, thereby impairing the debt payment, operation and assets of CSMHF and its successor company and thus the value of the CSMHF stock purchased by HMCA upon defendants' inducement." (Complaint, paragraph 52.) Plaintiffs allege that said conduct establishes a claim under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder.

In their third cause of action, entitled Fraud in the Inducement of Settlement, plaintiffs ask for reinstatement of Civil No. 86–0921JP filed by CSMHF against the Department of Health which was dismissed with prejudice pursuant to a settlement agreement. Plaintiffs allege that they were

**2.** Referring to Civil No. 86–0921JP filed by CSMHF against the Department of Health.

fraudulently induced to settle the lawsuit, to pay the attorney's fees thereof, to seek dismissal without prejudice and, upon approval of the bankruptcy plan to bind themselves to a dismissal with prejudice of their federal lawsuit against the Health Department. In light of the above, that agreement is null and void *ab initio*, for which reason plaintiffs have a right to reinstate the lawsuit referred to before this [Court].

(Complaint, paragraph 57.)

### The Constitutional Claim

[1] As stated, plaintiffs have specifically alleged that defendants deprived them of their fundamental property interests in violation of the due process and taking clauses of the Fifth Amendment, applicable to Puerto Rico through the Fourteenth Amendment. If taken as true, however, what the allegations common to *all* causes of actions establish is a claim for breach of contract. To borrow a phrase from the early Supreme Court case of *City of Dawson v. Columbia Ave.*, 197 U.S. 178, 25 S.Ct. 420, 49 L.Ed. 713, the complaint in this case presents "a naked case of breach of contract." As observed by the Supreme Court in *McCormack v. Oklahoma City*, 236 U.S. 657, 35 S.Ct. 455, 59 L.Ed. 771 (1915), the allegations of breach of contract "gets no other quality or character by the assertion that complainant had a vested right of property" in the contracts or their performance and that to take this away is a deprivation of property without due process of law. The whole purpose behind the case is to restrain defendants from cancelling the Carolina and Fajardo contracts and to obtain damages allegedly caused by defendants' contractual breach. The gravamen of this case lies in determining whether or not the defendants, or for that matter, the plaintiffs themselves, fulfilled or breached their duties under Contract 83004[3] or its Amendment H. That core

determination will be governed by principles of contract law of the Civil Code of Puerto Rico.

Courts have long recognized that not every interference with contractual rights gives rise to a constitutional claim under Section 1983. In *Reich v. Beharry*, 883 F.2d 239, 242 (3rd Cir.1989), the Court noted that "... if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities." In *Boucvalt v. Board of Commissioners*, 798 F.2d 722 (5th Cir.1986), the Fifth Circuit rejected the claim that the termination of an anesthesiologist's contract with a parish hospital violated his right to procedural due process. Characterizing *Boucvalt* as "a party to an ordinary contract who contends that the other party to the contract is in breach," the Court declined to apply the predeprivation hearing requirement of Loudermill/Roth/Sinderman involving employment contracts of tenured public employees "so as to federalize all contract law." *Id.*, at pp. 729–730. The Court noted that:

> If the other party were a private citizen, Boucvalt would be entitled to no more than to sue for breach of contract. This is an adequate remedy to protect Boucvalt's rights and to compensate him for his damages. Simply because his contract is with a public body, however, Boucvalt claims he was constitutionally entitled to some sort of formal hearing *before* the contract was terminated. That such a hearing be required before any public agency can ever terminate or breach a contract is unrealistic and contrary to common sense.

*Id.*, at p. 729.

Again, in *Physicians' Services Medical Group v. County of San Bernardino*, 825

---

**3.** Article 5.2 of the contract provides:
The Department may terminate this Agreement for cause as determined by the Secretary of Health. If the cause so determined shall continue for a period of sixty days after notice by registered mail to HMCA from the

Department stating the specific clause, termination will be effective. As a result of any such termination, the Department shall not, however, have any right to recover any consequential damages.

F.2d 1404, 1409–1410 (9th Cir.1987), the Court, although recognizing that employment contracts are not "the only kind that may be entitled to Fourteenth Amendment protection," went on to state that "the farther the purely contractual claim is from an interest as central to the individual as employment, the more difficult it is to extend it constitutional protection without subsuming the entire state law of public contracts." The Second Circuit has also drawn the line between contractual interests, such as employment contracts, entitled to procedural due process protection, and all other contracts. Categorically stating in *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 966–967 (2nd Cir. 1988), that the course of the law in that Circuit "has not moved beyond according procedural due process protection to interests other than those well within the contexts illustrated by *Goldberg* [4] and *Roth*,"[5] and, referring also to *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) and *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Court observed:

> In these contexts, the Due Process Clause is invoked to protect something more than an ordinary contractual right. Rather, procedural protection is sought in connection with a state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits. Without doubt, *Goldberg, Roth,* and subsequent cases have accorded procedural due process protection to interests that "extend well beyond actual ownership of real estate, chattels, or money," *Board of Regents v. Roth, supra,* 408 U.S. at 572, 92 S.Ct. at 2706 (citations omitted). But we hesitate to extend the doctrine further to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a governmental contractor.

*Goldin, supra,* at 966–967.

Plaintiffs entire case rises or falls on their breach of contract claim. Their contracts to provide medical services to the Department of Health of Puerto Rico like those of *Physicians' Group, supra,* and the circumstances alleged in the complaint surrounding their premature termination and resultant breach, do not create any constitutionally protected interests for the plaintiffs.

### The Takings Claim

■ Plaintiffs have also briefly asserted in paragraph forty-eight (48) of their complaint that the defendants' conduct constitutes a taking without just compensation. At page thirty-one (31) of their memorandum in support of jurisdiction, docket entry 15, they state that defendants "attempted to physically take over the Carolina Hospital without waiting the sixty-day period required by the contract and defendants intend unless enjoined to also take over private assets belonging to plaintiffs without expropriation, condemnation or just compensation." The factual allegations of the complaint do not state a takings claim. The complaint barely alleges an *intention* on the part of the defendants to take over plaintiffs' property. It does not allege sufficient facts which would establish an unconstitutional taking of private property. The takings claim is but an extension of their allegations of breach of contract, none of which raise a question under the Constitution of the United States.

### SECURITIES FRAUD CLAIM

■ Plaintiffs have also alleged that defendants' actions constitute a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Section 10(b) of the Act provides as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any

---

**4.** *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

**5.** *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange

. . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Pursuant to said section 10(b), the Securities and Exchange Commission promulgated Rule 10b–5, which states as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

Relying on *Willco Kuwait (Trading) S.A.K. v. de Savary,* 843 F.2d 618 (1st Cir.1988) and *Kennedy v. Josephthal & Co.,* 814 F.2d 798 (1st Cir.1987), plaintiffs argue that the complaint cannot be dismissed if it pleads that defendants: (a) made a false representation or failed to disclose a material fact, (b) with scienter, (c) in connection with the purchase of a security, and that (d) plaintiffs justifiably relied upon such representation or omission to their detriment.

Reviewing those factors, however, there is a serious question regarding whether the allegedly misleading or false representa-

tions were made *in connection with* defendants' purchase of the securities.

The Court of Appeals for the Second Circuit, in *Chemical Bank v. Arthur Anderson & Co.,* 726 F.2d 930 (2nd Cir.), *cert. denied* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984), answered in the negative a question which the Supreme Court had left open: "whether misrepresentations or omissions involved in a securities transaction, but not pertaining to the securities themselves can form the basis of a violation. . . ." [6]

As further discussed in *Manufacturers Hanover Trust v. Smith Barney,* 770 F.Supp. 176, 181 (S.D.N.Y.1991):

Misrepresentations or omissions involved in a securities transaction but not pertaining to the securities themselves cannot form the basis of a violation of Section 10(b) or Rule 10b–5. . . . The Second Circuit Court has noted that the "misrepresentation must relate to the securities alleged to satisfy the purchase and sale requirement, and not just to the transaction in its entirety." . . . "The 'in connection with' requirement mandates that the alleged fraud concern the fundamental *nature* of the [securities]: namely, characteristics and attributes that would induce an investor to buy or sell the particular [securities]." (Citations omitted; emphasis in the original)

Plaintiffs' allegations regarding its second clause of action—securities fraud claim—are as follows:

51. Defendants Lladó and Rivera–Cruz induced HMCA (P.R.) to purchase the shares of CSMHF and bring that corporation out of bankruptcy by formally representing to plaintiffs that it would be legal and allowable to finance the debt and operations of the Fajardo Hospital with the additional payments to be made HMCA under Amendment H by the Health Department for tertiary level services rendered in the Carolina Hospital. Defendants further represented to plaintiffs that the tertiary level services being rendered in Carolina Hospital were adequate, and that any required changes would be negotiated in the future.

**6.** *Rubin v. United States,* 449 U.S. 424, 429, n. 6,    101 S.Ct. 698, 701 n. 6, 66 L.Ed.2d 633 (1981).

52. Unbeknownst to plaintiffs, defendants had at the time a plan to charge plaintiff with not providing adequate tertiary level services, unilaterally cutting off the funds received pursuant to Amendment H under that guise, thereby impairing the debt payment, operation and assets of CSMHF and its successor company and thus the value of the CSMHF stock purchased by HMCA upon defendants' inducement. Defendants Soler–Zapata's, Lladó's and Rivera–Cruz' final overt act in the conspiracy was to cancel the payments for tertiary services once the CSMHF stock was purchased by HMCA and the bankruptcy reorganization plan approved.

In essence, plaintiffs alleged that they were pressured into purchasing the Fajardo Hospital with the inducement that if they did so, they would be given the contract called Amendment H, for provision of tertiary services at the Carolina complex, and that they could use funds generated by Amendment contract to finance the Fajardo operation. The allegations of fraud are that the defendants conspired beforehand to accuse them on non-performance and cancel Amendment H contract. As is evident, the alleged fraudulent misrepresentations are totally unrelated to the value of the CSMHF stock, that company's assets, or any other characteristics of the securities themselves.

The fraud alleged here relates not to the securities themselves involved in the transaction, but to the alleged intent to breach the Amendment H contract. We must, therefore, conclude that the complaint has failed to state a claim under Section 10(b) and Rule 10b–5 of the Securities Exchange Act.

SO ORDERED.

### JUDGMENT

For the reasons stated in the Opinion and Order issued today, this action is hereby DISMISSED in its entirety.

SO ORDERED AND ADJUDGED.