847 F.Supp. 236 (1994)
ESTATE OF Jaime SOLER, By and Through Ivette Perez Vda. DeSOLER, Marie Ivette Soler Perez, Jaime A. Soler Perez, as well as Antonio Soler Perez, and Dr. Jose A. Badillo, individually and as shareholders acting on behalf of Centro Medico Del Turabo, Inc., and Centro Medico Del Turabo, Inc., Plaintiffs,
v.
Joaquin RODRIGUEZ, Fernando E. Agrait, Carlos M. Piñeiro, Juan Chaves, Luis Garcia Passalacqua, Dr. Jose J. Vargas Cordero; Universidad De Ciencias Medicas San Juan Bautista, Inc., Defendants,
and
Centro Medico Del Turabo, Inc., Nominal Defendant.
Civ. No. 93-2631 (JAF).
United States District Court, D. Puerto Rico.
February 7, 1994.
Order on Reconsideration March 25, 1994.
*237 Wallace González-Oliver and Pedro A. Jiménez, Gonzalez Oliver, Correa Calzada, Collazo Salazar, Herrero & Jimenez, San Juan, PR, for plaintiffs.
Jorge Pérez Díaz & Jorge Peirats, Pietrantoni Mendez & Alvarez San Juan, PR, for CMT.
Fernando E. Agrait, defendant appearing pro se.
César R. Miranda, San Juan, PR, for UCMSJB.
Elí B. Arroyo, San Juan, PR, for remaining defendants.

OPINION AND ORDER
FUSTE, District Judge.
Plaintiffs, shareholders of Centro Médico del Turabo, Inc. ("CMT") brought a shareholder derivative suit against three members of the board of directors of CMT, a corporate shareholder of CMT, and CMT's attorney. Plaintiffs allege violations of section 10(b) of the Securities Exchange Act of 1934 and state corporate law, and seek a preliminary injunction to reverse a sale of CMT stock and rescind certain actions taken at the last CMT shareholders' meeting. We have granted plaintiffs a temporary restraining order. We now find that plaintiffs have failed to state a claim upon which relief can be granted under section 10(b) and, therefore, dismiss the securities fraud claim. Because federal jurisdiction is premised solely on the alleged securities violation, we decline to retain jurisdiction over the remaining state claims and, therefore, dismiss them without prejudice.

I.

Background
Doctors Jaime Soler and José A. Badillo were two of the founding members of Centro Médico del Turabo, Inc., a corporation formed to own and operate the Hospital Interamericano de Medicina Avanzada ("HIMA") in Caguas, Puerto Rico. Dr. Soler is now deceased, and the plaintiffs in this action are his widow, his three children, Dr. Badillo, and CMT. The defendants include the President of CMT, Joaquín Rodríguez; the Treasurer, Carlos Piñeiro, and the Secretary, Juan Chaves, as well as the Universidad de Ciencias Médicas San Juan Bautista, Inc. ("UCMSJB"), a shareholder of CMT and the owner and operator of San Juan Bautista School of Medicine, a medical school affiliated with HIMA.
The present conflict has its genesis in a meeting of the Board of Directors of CMT in 1987. During the meeting, the Board, including Drs. Badillo and Soler, unanimously passed a resolution authorizing the issuance of 300,000 new shares of common stock of the company, to be sold to any person, in multiples of 100 shares at $10 per share. The *238 purpose of the offering was to raise capital to develop HIMA. The response to the offering apparently was not overwhelming, and many of the 300,000 shares remained unsold. Over the years, a schism developed on the board of directors regarding the affiliation of CMT with the San Juan Bautista School of Medicine and UCMSJB. Plaintiffs were opposed to various agreements with UCMSJB which defendant Rodriguez promoted, including a lease of space on the grounds of HIMA to UCMSJB.
Prior to September 16, 1993, plaintiffs owned a block of 652,500 common voting shares of CMT, which was equal to a 50.43% ownership, and UCMSJB owned 10,000 or 0.77% of the outstanding shares. On or around September 16, defendants Rodríguez and Chaves approved the sale of a block of 200,000 common voting shares to UCMSJB for $10 per share. The 200,000 shares were purportedly part of the issuance approved in 1987. On October 28, 1993, the annual shareholders' meeting of CMT was held. The plaintiffs had planned to vote their majority block of shares at the meeting so as to appoint two outside independent directors to the Board. On that evening, however, they were informed of the sale of the 200,000 shares, and of the resulting fact that they were no longer majority shareholders of CMT. Plaintiffs left the meeting after learning of this fact. After their departure, an election was held and Mrs. Soler and Dr. Badillo were removed from the board of directors of CMT. Plaintiffs then filed this action, requesting a rescission of the sale of the 200,000 shares to UCMSJB, an invalidation of the election of the new board of directors and of all actions taken by the new board, and an order for a new shareholders' meeting.

II.

Discussion
Defendant CMT filed a motion requesting realignment as a defendant, and for dismissal or summary judgment. Defendant Fernando E. Agrait, the attorney for CMT, filed a motion for summary judgment and the remaining defendants filed a motion to dismiss. Because we decide the motions based on only the pleadings, we will treat all motions as motions to dismiss.

A. Standards for Motion to Dismiss

A defendant may move to dismiss an action against it based only on the pleadings for "failure to state a claim upon which relief can be granted. ..." Fed.R.Civ.P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir.1993).

B. Securities Fraud

This case presents the question of whether a corporation can be said to have been deceived in connection with the sale of its securities within the meaning of section 10(b) of the Securities Exchange Act of 1934 when the president and the secretary authorized the sale of allegedly previously-issued stock to a shareholder, without approval of the board of directors or the other shareholders. Plaintiffs contend that the sale of the 200,000 shares to UCMSJB was a violation of Rule 10b-5, promulgated pursuant to section 10(b) of the Securities Exchange Act of 1934.[1] The complaint was filed as a derivative lawsuit on behalf of CMT.[2]
*239 In order to state a cause of action under Rule 10b-5, a plaintiff must plead that the defendant, acting with scienter, made a false material representation or failed to disclose material information, in connection with the purchase or sale of a security, and that plaintiffs justifiably relied upon the representation or omission, resulting in economic loss to the plaintiff. Willco Kuwait (Trading) S.A.K. v. de Savary, 843 F.2d 618, 623 (1st Cir.1988).
Plaintiffs' argument under 10b-5 is basically that the corporation was harmed because the defendants carried out a secret scheme to sell the 200,000 shares of CMT common stock to UCMSJB for an inadequate price and with fraudulent collateral. Plaintiffs allege that CMT was defrauded and injured because the stock was "surreptitiously issued, sold and financed for wholly inadequate consideration and fictitious collateral as part of a concealed scheme to entrench management, prevent the appointment of outside directors, unduly favor an inside director and a corporate shareholder owned and/or controlled thereby. ..." Defendants' main response is that there is no cause of action under 10b-5 because plaintiffs' allegations merely consist of mismanagement and violations of fiduciary duty under state law, which are not actionable under the federal securities statutes. Defendants rely on the Supreme Court's holding in Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). In Santa Fe, the Court found that unless there is an element of "deception", a claim under Rule 10b-5 cannot be upheld. As long as full disclosure has been made to shareholders, oppressive conduct by controlling shareholders will not state a cause of action under Rule 10b-5. Plaintiffs argue that the defendant's failure to inform the rest of the Board and the shareholders about the sale of the stock fulfills the required deception element.
We think that the pertinent question here is whether the alleged omissions were "in connection with" the sale of securities. This element has been found to require a showing that the wrongful conduct caused the plaintiff to engage in the disputed sale or purchase of securities and that the plaintiff's injuries are directly attributable to the deception and to the resulting transaction. Wilson v. Ruffa & Hanover, P.C., 844 F.2d 81, 85 (2d Cir.1988).
Plaintiffs contend that the concealment of the fact of the sale fulfills the "in connection with" element because the entire transaction was hidden from the disinterested members of the board of directors. While this argument has some appeal at first glance, we find on further examination that, making all inferences in favor of plaintiff, the facts alleged here do not establish the proper nexus between the omission and the sale of the CMT stock.
The "in connection with" requirement implements the fundamental purpose of section 10(b) and Rule 10b-5, which is:
[t]o protect persons who are deceived in securities transactions  to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.
Chemical Bank v. Arthur Andersen & Co., 726 F.2d 930, 943 (2d Cir.), cert. denied, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). See also Basic, Inc. v. Levinson, 485 U.S. 224, 230, 108 S.Ct. 978, 982, 99 L.Ed.2d 194 (1988).
To satisfy the "in connection with" requirement, plaintiff may not allege fraudulent acts which merely happened to involve commodity futures in some way. The "in *240 connection with" requirement mandates that the alleged fraud concern the fundamental nature of the [security]: namely, the characteristics and attributes that would induce an investor to buy or sell the particular [security].
Kearney v. Prudential-Bache Securities, Inc., 701 F.Supp. 416, 424 (S.D.N.Y.1988).
Courts have repeatedly found that where an alleged fraud or omission did not relate to the nature or characteristics of the traded securities, there was no causal link to the disputed transaction. In Chemical Bank, the Second Circuit found that an accounting firm's allegedly deceptive information regarding the financial condition of a parent corporation was not made "in connection with" the parent corporation's pledge of a subsidiary's stock (the security), because the allegedly false information related only to the parent corporation and not to the value of the subsidiary's stock. Chemical Bank, supra. The Eighth and Fourth Circuits have found that where defendant employers led plaintiff employees to believe that they would receive shares of stock as part of their job compensation, and then failed to carry through on the promise, plaintiffs did not state a claim under 10b-5 because the deception had to do with the obtainment of the security rather than its value. Gurwara v. LyphoMed, Inc., 937 F.2d 380 (7th Cir.1991); Hunt v. Robinson, 852 F.2d 786 (4th Cir. 1988). Where a broker represented to plaintiffs that he would manage their account faithfully, and then proceeded to make unauthorized sales of securities, the court found that there had been no misrepresentation or omission regarding the character or nature of securities and therefore no liability under Rule 10b-5. Bochicchio v. Smith Barney, Harris Upham & Co., 647 F.Supp. 1426 (S.D.N.Y.1986). See also HMCA (Carolina), Inc. v. Soler-Zapata, 778 F.Supp. 1234 (D.P.R.1991); Manufacturers Hanover Trust v. Smith Barney, 770 F.Supp. 176, 181 (S.D.N.Y.1991); Crummere v. Smith Barney, 624 F.Supp. 751, 755 (S.D.N.Y.1985).
Although these cases encompass disparate factual situations, the common thread among them is that the "in connection with" element is not satisfied where the misrepresentation or omission did not relate to the inherent nature, characteristics or value of the security and, therefore, could not have influenced the plaintiff in a decision to sell or purchase the security. In the present case, the alleged omission was the failure of the defendants to reveal, in advance, the sale of the stock of CMT to UCMSJB. Where a corporation is fraudulently induced into issuing its own securities for less than their fair value because of the misappropriation of inside information regarding the stock, the corporation itself is injured and a shareholder derivative action is appropriate. Frankel v. Slotkin, 984 F.2d 1328, 1334 (2d Cir.1993). However, the sale in this case did not take place because the corporation was uninformed about the nature of the stock, or because defendants misappropriated inside information about the value of the securities to be sold. We cannot find that the concealment of the sale itself from the corporation caused the corporation to enter into the sale.[3] Rather than "in connection with" the sale of a security, the deception here was "of" the sale of a security.
*241 Although it may seem incongruous to suggest that disclosure of a sale without full disclosure of some material aspect of the sale would be a violation of 10b-5, while failing to disclose the sale at all is not a violation, corporate mismanagement is not the evil which 10b-5 was meant to eradicate. Rather, it was intended to promote full and fair disclosure to those who buy or sell securities in order to ensure that investors are able to make the correct decision as to whether to carry out the purchase or sale. See Santa Fe, 430 U.S. at 477-78, 97 S.Ct. at 1303; O'Brien v. Continental Illinois Nat. Bank & Trust, 593 F.2d 54, 60 (7th Cir.1979). While we recognize that the failure to reveal the sale at all necessarily meant that information about the nature of the shares was also concealed, because the company did not "know" that it was selling any securities, the corporate entity cannot be said to have been deceived as to the characteristics or value of the securities, or to have made any decisions based on a lack of knowledge about the nature of the securities. We find that while this wholesale concealment of the sale may state an action under state law, the deception was not "in connection with" the sale of securities and, therefore, it was not a violation of the federal securities statutes.
The second, third, and fourth causes of action were brought under the laws of the Commonwealth of Puerto Rico. Following the rule set forth in United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139-40, 16 L.Ed.2d 218 (1966), we exercise our discretion and dismiss without prejudice these supplemental state claims. See Newman v. Burgin, et. al., 930 F.2d 955, 963-64 (1st Cir.1991); Gilbert v. City of Cambridge, 932 F.2d 51, 67 (1st Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 192, 116 L.Ed.2d 153 (1991).

III.

Conclusion
We find that plaintiffs have failed to state a cause of action under the Securities Exchange Act of 1934. We, therefore, DISMISS the federal claim against all defendants for lack of jurisdiction. We DISMISS WITHOUT PREJUDICE of state-court litigation all state claims.
IT IS SO ORDERED.

ORDER ON RECONSIDERATION
Before the court is a motion for reconsideration following the dismissal of plaintiff's complaint for failure to state a claim under section 10(b) of the Securities Exchange Act of 1934. The relevant facts are contained in our Opinion and Order dismissing the claim. An examination of each of plaintiffs' contentions leads us to the same conclusion; namely, that there is no cause of action under the federal securities laws for the wrong alleged here.

I.

Discussion

A. Subjective/Objective Test of Causality

Plaintiffs first contend that the court incorrectly employed a subjective test of causality in fact applicable to securities fraud actions alleging misrepresentation, rather than an objective test which should be applied when plaintiffs allege a failure to disclose. Plaintiffs rely on Affiliated Ute Citizens v. U.S., 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). In Affiliated Ute, the Supreme Court held that under Rule 10b-5, courts may presume actual reliance upon omitted material information, due to the conceptual difficulty of proving that a plaintiff relied upon information which was never revealed. Information is deemed to be material for this purpose when there is a substantial likelihood that its disclosure would have been considered significant by a reasonable investor or shareholder. Basic, Inc. v. Levinson, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Plaintiffs' argument misses the mark because what we found was not that the corporation did not rely upon the omitted information, but that the omission was not the type which Rule 10b-5 was meant to remedy.

B. Awareness of Investment Decision by Corporate Entity

Plaintiffs' second contention is that our opinion utilized a test of awareness of an *242 investment decision applicable to transactions between individuals or entities, when the instant case involves allegations of deceit on a corporation by its own management. We have no argument with the well-established notion that,
[t]here is deception of the corporation (in effect, of its minority shareholders) when the corporation is influenced by its controlling shareholder to engage in a transaction adverse to the corporation's interests (in effect, the minority shareholders' interests) and there is nondisclosure or misleading disclosures as to the material facts of the transaction.
Goldberg v. Meridor, 567 F.2d 209, 217 (2d Cir.1977).
Goldberg and its progeny recognize that even though some controlling directors or shareholders have complete information, they can conceal that information and utilize it to the detriment of the corporation, thus deceiving the corporate entity in violation of Rule 10b-5. We agree that in the case before us, taking the facts as alleged by plaintiffs, the corporation was deceived when some members of the board of directors conducted a sale of corporate stock without informing the full board and the remaining shareholders.
What we held, however, is that the deception of the corporation was not in connection with the sale of securities as required for liability under Rule 10b-5. In Goldberg, the minority shareholders knew that the disputed transaction was to take place, but they were deceived into forgoing a possible state injunction because pertinent facts about the transaction were not revealed by defendants. Id. at 213.[1] Therefore, a decision by the minority shareholders not to seek a state injunction was completed without the benefit of complete information. Here, because the minority shareholders had no knowledge that the transaction was taking place, there was no decision-making process of either type. Although we recognize the incongruity of this holding in that it allows for complete deception while censuring the withholding of partial information regarding a securities transaction, we again note the Supreme Court's admonition that section 10(b) was not meant to be applied to "instances of corporate mismanagement . . . in which the essence of the complaint is that shareholders were treated unfairly by a fiduciary." Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 478, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977).
Plaintiffs further argue that we have failed to follow Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), in finding no cause of action where the deception or omission was unrelated to the inherent nature, characteristics or value of the security, contending that the omission in Bankers Life did not fit in this category, and yet was actionable under Rule 10b-5. In Bankers Life, the defendants caused an insurance company to sell all of its stock in exchange for the company's own assets. The deception related to the nature of the transaction  that the plaintiff would be paying for its own securities  and not to the existence of the transaction. We were not intending to create a hard and fast rule as to what should be deemed "in connection with" a securities transaction, but merely to point to illustrative cases in order to demonstrate why the instant action falls outside the purview of Rule 10b-5. See Smallwood v. Pearl Brewing Company, 489 F.2d 579, 595 (5th Cir.1974) (stating that the outer limits of the "in connection with" test should be approached on a case-by-case basis).
Our holding is in accordance with the Court's recognition in Bankers Life that, although the "in connection with" requirement of Rule 10b-5 is to be read broadly, it was not meant to regulate internal corporate mismanagement. 404 U.S. at 12, 92 S.Ct. at 169. The line between federal securities fraud cases and state breach of fiduciary duty cases is difficult to draw, and certain deceptions or omissions may certainly qualify as both. However, that is not the case here.
Defendants have argued that this situation is analogous to the facts in Ketchum v. Green, 557 F.2d 1022 (3d Cir.1977), and we agree. Ketchum involved a close corporation *243 which allowed only employees to be shareholders of the corporation. In the event that an employee was terminated, he or she was forced to sell all stock. The defendants allegedly hatched a secret plan to oust plaintiffs as employees and thus forced them to sell their stock. The Third Circuit found that the disputed transaction was not actionable under Rule 10b-5 because it occurred in connection with a struggle for control of the corporation, rather than in connection with the sale of securities. The court noted that the plaintiffs' request that the court enjoin the removal of plaintiffs as officers, as well as the resulting sale of the stock, underscored the finding that what was truly at issue was the control of a close corporation. Similarly, in the instant litigation, we find that the dispute is clearly over control of the CMT. Plaintiffs and defendants disagree over the direction to be taken by the corporation, particularly in respect to its affiliation with UCMSJB. According to plaintiffs, the sale was the first step in a plan to oust plaintiffs from the board of directors and solidify the association of CMT with UCMSJB. In order to further the scheme, defendants allegedly concealed the entire sale from the plaintiffs. Plaintiffs have requested injunctive relief reversing the sale of the stock, the election of the new board of directors from which they were excluded, and all actions taken by the new board. This is a struggle which belongs in state court.

II.

Conclusion
The motion for reconsideration is DENIED.
IT IS SO ORDERED.
NOTES
[1] Rule 10b-5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
(a) to employ any device, scheme, or artifice to defraud,
(b) to make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading, or
(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
[2] Although the complaint states that the suit was brought on behalf of the plaintiffs individually and as a derivative suit, the plaintiffs have submitted no arguments regarding a direct cause of action. In any event, because the plaintiffs did not purchase or sell the securities involved in the disputed transaction, they cannot maintain an individual action for securities fraud under 10b-5. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Therefore, we will only address the derivative action. A plaintiff shareholder can bring suit under 10b-5 derivatively on behalf of a corporation which was allegedly defrauded in connection with the purchase or sale of its own securities. See, e.g., Ray v. Karris, 780 F.2d 636, 641 (7th Cir.1985); Goldberg v. Meridor, 567 F.2d 209 (2d Cir.1977), cert. denied, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978). The plaintiffs here, as owners of CMT stock when the challenged transaction took place, have standing to bring an action on behalf of the corporation.
[3] Plaintiffs make some conclusory allegations that if the full board of directors had been appraised of the proposed sale, injunctive relief would have been available under state law. Although a claim that defendants failed to disclose a breach of fiduciary duty or omitted non-required information, coupled with an assertion that the omission deprived the plaintiff of an opportunity to enjoin the challenged transaction under state law may fulfill the causation element under 10b-5, Goldberg v. Meridor, 567 F.2d 209, 219-20 (2d Cir.1977), this does not change our analysis here. The information misstated in Goldberg was in regard to the value of assets of a parent corporation which were transferred to a subsidiary in return for the subsidiary's stock. If the minority shareholders of the subsidiary had known about the true value of the assets, they would have had reason to seek a state injunction to halt the transaction. The plaintiffs in that case had knowledge that the transaction was pending, they merely lacked full information about the nature of the transaction, and therefore made the decision not to seek an injunction. We do not hold that there was no misrepresentation in this case, nor decide whether plaintiffs would have had a remedy under state law if they had known in advance of the proposed sale. We merely hold that the omission here was not causally linked to the sale of the securities as required under Rule 10b-5.
[1] We note that while a few circuits have agreed that a 10b-5 action may be stated under facts analogous to Goldberg, the First Circuit has never ruled on such a case.